G & W ELECTRIC COMPANY, Plaintiff-Appellant, *v.* JOSLYN MANUFAC-TURING AND SUPPLY COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 84—1385

Opinion filed August 22, 1984.

Robert B. Jones and David A. Crossman, both of Fitch, Even, Tabin & Flannery, of Chicago, for appellant.

Mason, Kolehmainen, Rathburn & Wyss, of Chicago (Timothy J. Vezeau and Robert L. Rohrback, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

G & W Electric Company (G&W) appeals from an order of the circuit court denying the part of its motion for a temporary restraining

order which prayed that the court temporarily restrain defendant, Bruce M. Sauerbier, from assuming employment with defendant, Joslyn Manufacturing and Supply Company (Joslyn), and from disclosing the confidential and proprietary information of G&W to Joslyn. The order was entered without an evidentiary hearing. The only facts before the trial court were those alleged in plaintiff's verified complaint, in the affidavit of Lawrence Radawan, plaintiff's vice president, and in the motion to dismiss. Defendants have filed no responsive pleadings.

The question presented by this appeal is whether the trial court erred in denying G&W the restraints prayed for without an evidentiary hearing. We examine the pleadings to determine whether they contain allegations which could support the temporary restraining order which G&W seeks. From the sum of plaintiff's pleadings, these facts appear: G&W Electric Company designs, develops, manufactures and sells equipment for electric power distribution systems, including electric switches. Over the years it has done research and spent large sums of money to create and maintain confidential proprietary information and trade secrets regarding the design, development, manufacture and sale of its products. This information is original and of special substantive competitive value, and is made known only to those employees of G&W who must have access to it in order to perform their duties. Defendant Sauerbier was one of those employees, and as such he was required by G&W to enter into a confidential information agreement as a condition of his continued employment by G&W. The agreement, dated January 11, 1984, in pertinent part reads:

> "that after leaving G & W for any reason, I will not accept employment at a direct competitor, which is likely to utilize *** [the confidential and proprietary information of G&W known to Sauerbier] *** to the competitive detriment of G & W (the definition of such competitor and such likelihood is solely at the discretion of G & W), for a period of up to two years (term to be G & W discretion) commencing with date of separation, provided G & W declares (at its sole prerogative) a direct competitive conflict involving confidential proprietary information. I understand that, should a direct competitive conflict be declared by G & W, G & W will compensate me during this period at a rate equal to my most recent base compensation rate prior to separation date."

Sauerbier, in a letter dated May 7, 1984, advised G&W that he was terminating his employment with G&W effective May 18, 1984,

and that he had accepted a position with Joslyn Manufacturing and Supply Company to begin immediately after the termination. Joslyn is also engaged in the design, development, manufacture and sale of electrical equipment and is a direct competitor of G&W. On the next day, G&W sent a letter to Sauerbier stating that pursuant to their employment agreement, "G & W has determined that Joslyn is a direct competitor of G & W's, and that your employment at Joslyn would be likely to utilize confidential proprietary technical, financial and strategic information and plans which you acquired during your employment by G & W. G & W hereby exercises its right to continue to compensate you at your most recent base compensation ($2,035 per month) and in return we expect you to decline employment at Joslyn as provided in your employment agreement." After another exchange of letters, Sauerbier, on May 14, 1984, notified G&W that he had gone to work for Joslyn. On May 16, 1984, G&W filed its complaint and motion for temporary restraining order.

██ ██ It has been repeatedly held covenants such as the one in the case at bar, which restrict employment opportunities of former employees, are basically in restraint of trade and will be enforced only when their limitations as to time and territory are not unreasonable. (*Haag Brothers, Inc. v. Artex International, Inc.* (1978), 60 Ill. App. 3d 141, 145, 376 N.E.2d 636.) In the case before us, the restriction against Sauerbier's employment was limited in time to two years, but it had no geographical limitation. G&W argues that specific geographic limitation is impossible in this case, however, because plaintiff is in competition throughout the United States and in foreign countries as well. We need not decide whether the worldwide restriction on Sauerbier's employment was reasonable in light of the fact G&W's business was worldwide, because nothing before the chancellor even suggested the ubiquitous nature of G&W's operations. A plaintiff asking equity to enforce a restrictive covenant must allege facts establishing a valid enforceable contract. The record before the trial court failed to establish that the restriction on Sauerbier's employment was no broader than the extent of G&W's operations and was therefore reasonable although without geographical limitation. A claim never alleged in the complaint nor set up in plaintiff's theory of the case at trial cannot be considered on appeal. *Baker v. Collins* (1963), 29 Ill. 2d 410, 415, 194 N.E.2d 353.

██ ██ In further support of its argument that the restriction in the covenant in its employment contract is not unreasonable, G&W makes this point: "The restriction on Defendant's subsequent employment was not automatic and did not preclude him from taking em-

ployment with a direct competitor. The restriction took effect only upon notice to Defendant that Plaintiff had determined that a particular direct competitor was likely to misappropriate Plaintiff's proprietary information." This limitation on the covenant's restrictions, however, becomes illusory when read together with a phrase in the covenant which follows it: "the definition of such competitor and such likelihood is solely at the discretion of G&W." It can certainly be argued that under this covenant G&W would be the sole arbiter of where Sauerbier worked for two years following his leaving G&W.

Another point made by G&W, perhaps to mitigate the severity of the restrictions on Sauerbier's employment opportunities, is that "during that period Plaintiff is obligated to pay Defendant's full base salary." We fail to see how the payment of this stipend would make the restrictions placed on Sauerbier reasonable. That is determined by how relevant and necessary it is to the protection of G&W's legitimate interests.

For these reasons we find no error in the denial of this part of plaintiff's motion for a temporary restraining order.

■■ The motion also sought to restrain Sauerbier "from disclosing the Confidential and Proprietary Information of G&W to defendant Joslyn Manufacturing and Supply Company or to any others." This portion of the motion was also denied. We believe this action taken without an evidentiary hearing was error. Indeed, defendants, in their brief on appeal, state: "Defendants did not then and would not now object to entry of an order prohibiting Akers and/or Sauerbier from disclosing to Joslyn any specifically identified trade secrets (i.e., excluding information in the public domain and that representing general skills and knowledge)." We reverse and remand this portion of the order appealed.

Affirmed in part, reversed and remanded in part.

RIZZI, P.J., and McNAMARA, J., concur.