JOSEPH PEDOTT, Plaintiff-Appellee and Cross-Appellant, v. HARRY DORMAN *et al.*, Defendants-Appellants (The First National Bank of Chicago, as Ex'r of the Last Will of Meyer Samuel Pedott, Deceased, Intervening Plaintiff-Appellee; Joseph Pedott *et al.*, Defendants-Appellees).

First District (3rd Division)   No. 1—88—3330

Opinion filed December 6, 1989.

---

*Justice Quinlan participated in the decision of this case prior to his resignation from the court.

86

Morgan & Karzov, Ltd., of Chicago (Arnold J. Karzov and Douglas W. Graham, of counsel), for appellants.

Jones & Jones, of Chicago (George W. Jones and Jeffrey A. Jones, of counsel), for appellee First National Bank of Chicago.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Joseph Pedott, sued defendants, Harry and Selma Dorman, and Central National Bank in Chicago (CNB), for, *inter alia*, rescission of an assignment of his beneficial interest in a land trust to defendants Dorman. The First National Bank of Chicago (Intervenor), as executor of the last will of Meyer S. Pedott, plaintiff and defendant Selma Dorman's father, intervened in the action to collect on a promissory note executed by CNB, as land trustee, and by the Dormans as guarantors. After a bench trial, the court entered judgment for plaintiff, *inter alia*, rescinding the assignment of beneficial interest. The court also entered judgment for intervenor on the promissory note. Harry Dorman (hereinafter defendant, Selma Dorman having deceased), appeals from the judgments for plaintiff and intervenor. Plaintiff cross-appeals the entry of judgment for intervenor against the land trust involved in this litigation.

Plaintiff's complaint contained the following allegations material to this appeal. He assigned to the Dormans his beneficial interest in a three-story brick building located at 4842 North Ridgeway in Chicago (the premises) held in trust by CNB. He did so at the Dormans' request and that of Meyer Pedott and in consideration of Meyer Pedott's promise to bequeath his estate equally to his three children and Selma Dorman's promise to share the estate equally amongst them. After Meyer Pedott executed a will to that effect, the Dormans conspired to induce him through the exercise of undue influence to disinherit plaintiff. Meyer Pedott executed codicils to his will which disinherited plain-

tiff when Meyer Pedott died in 1979. Pursuant to a will contest instituted by plaintiff, the codicils were not admitted to probate. The actions of the Dormans constituted a breach of their promises and resulted in a failure of consideration for the assignment of the beneficial interest in the premises.

At trial, the following facts relevant to plaintiff's action against defendants were either stipulated to or revealed by the testimony, as found by the trial court. In March 1961, Meyer Pedott purchased the premises for $36,500 and held title thereto in his name. In January 1962, Meyer Pedott conveyed the premises in trust to CNB as trustee. Plaintiff was given the beneficial interest in and power of direction over the trust. Meyer Pedott died in 1979. Selma Dorman was afflicted with multiple sclerosis. One of the purposes, if not the key purpose, of Meyer Pedott's purchase of the premises was to provide rent-free shelter for Selma and her family for as long as she lived. Selma and her family lived on the premises rent-free, collected rents and accounted for income and expenses to plaintiff from 1962 to 1977. On June 14, 1976, Meyer Pedott executed a will bequeathing his estate to his three children, equally. On June 16, 1976, plaintiff assigned his beneficial interest in the premises to the Dormans at the request of the Dormans and Meyer Pedott. Plaintiff also shared the power of direction with the Dormans. The assignment was made without consideration. Subsequently, Meyer Pedott executed a will substantially the same as the June 14, 1976, will but later added two codicils, dated May 13, 1977, and December 10, 1977, which effectively disinherited plaintiff to Selma's benefit.

Intervenor's complaint contained the following allegations material to this appeal. Intervenor came into possession in 1982 of a promissory note executed by CNB, in 1962, as land trustee of the premises. The note provided for payment by CNB from the trust estate. CNB also executed a trust deed to Chicago Title and Trust Company (CT&T) as security for the note. CNB executed the note and trust deed pursuant to a letter of direction from plaintiff. The Dormans executed the note as guarantors. The note evidenced an intent to create a mortgage upon the premises. The note had not been paid.

With respect to plaintiff's action for rescission, the trial court concluded that Meyer Pedott's execution of the June 14, 1976, will, and plaintiff's June 16, 1976, assignment to the Dormans of the beneficial interest in the premises had to be considered together. The court further concluded that Selma "impinged upon Meyer S. Pedott's free will" and caused him to change his will to plaintiff's detriment. It further found that Selma had "integrated the change of assignment in

beneficial interest to totally and substantially change what Meyer S. Pedott had intended, a situation that totally benefitted her."

Intervenor's evidence at trial substantiated all of its factual allegations regarding the execution of the note. In addition to making factual findings in accordance therewith, the trial court expressed its opinion that one of the keys in the case was defendant's credibility. The court expressed its disbelief of defendant's inability to recall signing the note and of his contention that he paid $4,000 toward the purchase of the premises in 1961. The court noted the admissions of plaintiff, defendant and CNB that they made no payments on the note and then found intervenor's action valid, subject to the statute of limitations. The court rejected defendant's affirmative defenses of waiver and *laches*. The court concluded that, although the trust deed given to secure the note by a pledge of the premises as security had not been recorded, the note should stand as an equitable lien against the premises. Finally, the court found intervenor's attorney fees to be an obligation of defendant and CNB as trustee. The court entered judgment accordingly.

OPINION

On appeal, defendant raises three grounds for reversal of the judgment for plaintiff. He first asserts that plaintiff failed to establish by the requisite standard of proof, *viz.*, clear and convincing evidence, any recognized ground for rescission of the assignment of beneficial interest, which is absolute and unconditional on its face. Defendant asserts that plaintiff failed to prove the elements of a claim for fraud and deceit, *i.e.*, misrepresentations of material facts with knowledge of their falsity and an intent that plaintiff rely thereon and justifiable reliance thereon to plaintiff's injury.

We cannot agree that plaintiff's claim for rescission was grounded upon a theory of fraud. The material allegation of plaintiff's complaint against defendant was that the Dormans conspired to exert undue influence upon Meyer Pedott "to fabricate and induce upon" him distrust of plaintiff so as to cause him to disinherit plaintiff. It is clear that plaintiff's theory of action was the exercise of undue influence by the Dormans over Meyer Pedott.

■■ ■ "[U]ndue influence, whatever its origin, is 'any improper *** urgency of persuasion whereby the will of a person is overpowered and he is induced'" to do an act which he would not do or to forbear an act which he would do if left to act freely. (*Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 966, 466 N.E.2d 977.) A *prima facie* case of undue influence is made out where: (1) a fiduciary relationship ex-

isted between a testator and a person receiving a substantial benefit under the will (compared to others who have an equal claim to a testator's bounty); (2) the testator was in a dependent situation in which the substantial beneficiaries were in dominant roles; (3) the testator reposed trust and confidence in such beneficiaries; and (4) a will was prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. *Nemeth v. Banhalmi* (1984), 125 Ill. App. 3d 938, 960, 466 N.E.2d 977.

Given the foregoing definition and elements of undue influence, we find that plaintiff wholly failed to meet his burden of proof to obtain rescission of the assignment of beneficial interest based on the Dormans' exercise of such influence over Meyer Pedott.

Putting aside the evidence of the circumstances surrounding plaintiff's execution of the assignment of beneficial interest, plaintiff's entire evidence on the issue of undue influence merely consisted of the following. Plaintiff had been given a power of attorney by Meyer Pedott in or about 1973 because Meyer Pedott was very sick at that time. The Dormans had Meyer Pedott "sign some papers" relieving plaintiff of that responsibility approximately six months to a year after he executed the assignment of beneficial interest to them. The Dormans sued plaintiff in an attempt to remove his power of direction over the CNB trust in 1978 but were unsuccessful. Plaintiff instituted a will contest proceeding in order to be reinstated to a one-third share of Meyer Pedott's estate. According to plaintiff, the jury in that proceeding found that Meyer Pedott was under the undue influence of the Dormans.

This evidence was wholly insufficient to prove either directly or circumstantially, even by a preponderance of the evidence and even conceding that defendant did not contradict or rebut it, that either or both of the Dormans exerted an improper urgency of persuasion overpowering the will of Meyer Pedott and inducing him to disinherit plaintiff, which he would not otherwise have done. In other words, it wholly failed to show that a fiduciary relationship existed between Meyer Pedott and either of the Dormans, even conceding that they received a substantial benefit under the May and December 1977 codicils to the exclusion of plaintiff, who had an equal claim to Pedott's bounty. In this regard, we will not assume that the Dormans had a fiduciary relationship with Meyer Pedott simply by virtue of their filial relationship to him. However, even were we to do so, the remaining elements of proof of undue influence were not met in this case. There was absolutely no evidence that Meyer Pedott was dependent upon the Dormans or that they dominated him. Nor was there any evidence that he reposed trust and confidence in the Dormans. Finally there was no

proof that the Dormans were instrumental or participated in the preparation, procurement or execution of the codicils which disinherited plaintiff.

With regard to plaintiff's testimony that the jury in the probate proceeding found that the Dormans had unduly influenced plaintiff, we note, significantly, that plaintiff does not claim to have asserted *res judicata* or collateral estoppel below and does not do so on appeal. Moreover, although the judgment orders in his favor therein were admitted into evidence, they are not part of the record on appeal. In addition, neither of the copies of those judgment orders, appended as exhibits to plaintiff's complaint, recites such a finding by the jury. The copy of the order pertaining to the May 13, 1977, codicil merely recites that the *alleged grounds* of invalidity thereof were that Meyer Pedott executed it under an insane delusion "and/or" the undue influence of Selma Dorman. It further merely recites that the jury found neither the May 13, 1977, nor December 10, 1977, codicil to have been the valid last will and testament of Meyer Pedott.

■ Viewing plaintiff's execution of the June 16, 1976, assignment of beneficial interest together with Meyer Pedott's execution of the June 14, 1976, will, as the trial court did, is of no avail to plaintiff. Even conceding as proven facts that plaintiff executed the assignment in consideration of Meyer Pedott's promise to bequeath his estate to his children equally, that the assignment was motivated by plaintiff's and Meyer Pedott's desire and concern that Selma, afflicted with multiple sclerosis, and her family have a home for as long as she lived, that the Dormans repeatedly requested that plaintiff make the assignment prior to June 16, 1976, that plaintiff's assignment and Meyer Pedott's bequest of his estate to his children equally was agreed upon by plaintiff, Pedott and the Dormans, these facts provide no basis whatsoever for an evidentiary finding of undue influence upon Meyer Pedott by either of the Dormans.

■ In sum, we believe that plaintiff's evidence was wholly conclusory, speculative and conjectural. As plaintiff himself so aptly stated in his testimony, he had no "hard evidence[ ] about the will" of Meyer Pedott. Such evidence is as insufficient to carry a burden of proof by a preponderance of the evidence at a trial on the merits as it is to state a cause of action at the pleading stage. Our adversarial system of justice requires that a plaintiff present more evidence of alleged wrongdoing by a defendant than merely saying, "He did it," especially where, as here, the plaintiff did not see the defendant do it. While the Dormans and specifically Selma may, indeed, have exercised undue influence over Meyer Pedott, plaintiff's evidence would allow no reasonable fact

finder to reach that conclusion given the legal definition of the tort. The judgment for plaintiff must be reversed.

In view of our conclusion, we need not address the remaining issues raised by defendant against plaintiff.

In appealing the judgment for intervenor, defendant first asserts that the evidence failed to establish any consideration for the promissory note sued upon by intervenor, as required under section 3—408 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 3—408). We disagree.

■ The recital in a note attached to a complaint that it was given "For Value Received" is a sufficient allegation of consideration. (*Stolzenbach v. Pagoria* (1979), 71 Ill. App. 3d 863, 390 N.E.2d 376.) Moreover, in an action on a validly executed negotiable instrument, consideration is presumed (*Stolzenbach*, 71 Ill. App. 3d 863, 390 N.E.2d 376) and no further proof thereof is required other than the note itself (*M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 424 N.E.2d 1193). While the presumption of consideration is rebuttable, the evidence offered in rebuttal must be of a very clear and cogent nature. *Davis v. Buchholz* (1981), 101 Ill. App. 3d 388, 428 N.E.2d 198; *Gustafson v. Lindquist* (1976), 40 Ill. App. 3d 152, 351 N.E.2d 280.

Applying the foregoing rules here, we believe that consideration for the note sued upon by intervenor was adequately established at trial. The note attached to intervenor's complaint recited that it was given "For Value Received." Moreover, it was validly executed. CNB admitted its execution of the promissory note as trustee pursuant to plaintiff's direction. Defendant did deny having executed the note in 1962. However, the trial court disbelieved him. Instead, it believed the testimony of Etta Whitney, the wife and secretary of Bernard Whitney, who acted as Meyer Pedott's attorney with respect to matters respecting the premises in 1962, that defendant signed the note in her presence and had Selma sign it later. The credibility of the witnesses was for the trial court. A rebuttable presumption thus arose that there was consideration given for the note. And, defendant failed to overcome the presumption by clear and cogent evidence.

■■ The only evidence offered at trial tending to rebut the presumption of consideration was that of plaintiff, defendant and CNB that they had not received $15,000 pursuant to the note. The mere testimony of a payee under a promissory note that he gave the promisee the amount of money recited therein is insufficient to render a finding of a lack of consideration against the manifest weight of the evidence. (*Guzell v. Kasztelanka Cafe & Restaurant, Inc.* (1980), 87 Ill. App. 3d 381, 408 N.E.2d 1124.) Similarly, neither plaintiff's, defendant's nor

CNB's testimony was sufficient to overcome the presumption of consideration which arose in this case, whether or not the trial court relied thereon in entering judgment for intervenor.

██ █ Finally, as neither defendant, plaintiff, nor CNB rebutted the presumption of consideration, judgment was properly entered against defendant as CNB's guarantor. Where a guaranty is executed contemporaneously with an original note or obligation, the consideration for the note or obligation furnishes sufficient consideration for the guaranty. (*Continental National Bank v. Schiller* (1980), 89 Ill. App. 3d 216, 411 N.E.2d 593; *First National Bank v. Chapman* (1977), 51 Ill. App. 3d 738, 366 N.E.2d 937.) As such, a guarantor is liable on a note even though he does not receive the consideration flowing from the payee. See *Harris Bank Argo v. Midpack Corp.* (1986), 151 Ill. App. 3d 293, 502 N.E.2d 1127.

Defendant next contends that intervenor is barred from suing on the note under either the doctrine of *laches* or waiver. We disagree. We find that neither *laches* nor waiver is applicable to commercial paper such as the promissory note sued upon where, as is the case therein, all parties thereto waived presentment for payment, notice of dishonor, protest and notice of protest, as provided for under section 3—511(2)(a) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 3—511).

██ █ In *Pfaelzer v. Kau* (1904), 207 Ill. 116, 69 N.E. 914, *overruled in part on other grounds in Tucker v. Mueller* (1919), 287 Ill. 551, 122 N.E. 847, the guarantor of a promissory note contended that he was entitled to assert the defense of *laches* to a suit thereon. The guarantor asserted that he had been prejudiced by the payee's neglect to notify him of the default of the maker of the note and to bring suit thereon until after the maker had declared insolvency. After reviewing the law, the supreme court denied the right to assert the doctrine of *laches* by saying: "[H]e who guarantees the payment of a promissory note at its maturity *** is not entitled to notice of non-payment, and *** if the payee does not give notice of non-payment until the maker *** becomes absolutely insolvent, the guarantor is not thereby discharged, even though he *** is unable to enforce payment thereof against the principal." (*Pfaelzer*, 207 Ill. at 125.) *Tucker* merely overruled that part of *Pfaelzer* holding that one who endorsed the back of a note in blank was *prima facie* a guarantor. It did not overrule the holding in *Pfaelzer* that a guarantor cannot assert the defense of *laches*. As there was no dispute here as to the capacity in which the Dormans endorsed the note, *Tucker* does not preclude defendant's liability thereon.

Lastly, defendant asserts that there is no basis in the note or any statute for intervenor's recovery against defendant of attorney fees or expenses in collecting upon the note. On this issue, we agree with defendant.

The promissory note executed by CNB, as trustee, and by the Dormans as guarantors contained no provision with respect to liability for attorney fees or expenses incurred in suing for collection of the note. Nor did it contain any language incorporating the terms of the trust deed given to secure the note. The trust deed provided, *inter alia*:

"3. At the option of the holders of the note *** all unpaid indebtedness secured by this trust deed shall[ ] *** become due and payable (a) immediately in the case of default in making payment of any instalment of principal or interest on the note ***.

4. *** In any suit to foreclose the lien hereof, there shall be allowed and included as additional indebtedness in the decree for sale all expenditures and expenses which may be incurred by or on behalf of Trustee [Chicago Title & Trust Co.] or holders of the note for attorneys' fees ***. All [such] expenditures and expenses *** shall become so much additional indebtedness secured hereby *** when paid or incurred by Trustee or holders of the note in connection with *** any proceeding *** to which either of them shall be a party *** by reason of this trust deed or any indebtedness hereby secured.

The trust deed thus provided for the collection of attorney fees incurred in suing upon the note. However, that fact is not dispositive of defendant's liability therefor.

Defendant and intervenor both cite *Washingtonian Home v. Van Meter* (1938), 297 Ill. App. 591, 18 N.E.2d 81, as negating and supporting intervenor's right to attorney fees here. However, we do not find *Van Meter* supportive of either defendant's or intervenor's arguments on this issue. *Van Meter* is distinguishable from this case in that the party sued therein upon a promissory note, secured by a mortgage, signed the note as the maker rather than as a guarantor or surety and in that he was also properly sued on the mortgage, having signed that instrument as well. The other cases cited by intervenor are distinguishable on this basis (see, *e.g., Huber v. Brown* (1909), 243 Ill. 274, 90 N.E. 748) or because they merely involved suit on a promissory note (see, *e.g., Williams v. Federal Deposit Insurance Corp.* (1987), 155 Ill. App. 3d 633, 508 N.E.2d 337). Neither *Van Meter* nor those cases address the precise issue here, *i.e.*, the liability of a guarantor of a note secured by a mortgage for obligations imposed only in the mortgage

where he has not signed that instrument. We believe the following case law is dispositive of this issue.

A promissory note and mortgage given to secure it are separate contracts, and a provision in the mortgage not found in the note is not a part thereof and does not affect the personal liability of the maker of the note. (*Affronti v. Bodine* (1987), 155 Ill. App. 3d 755, 508 N.E.2d 500; *Mortgage Syndicate, Inc. v. Do & Go Equipment, Inc.* (1972), 7 Ill. App. 3d 106, 286 N.E.2d 520.) Similarly, a provision in the mortgage not found in the note cannot affect defendant's liability as guarantor. An action against a guarantor of a note is separate from the remedy of foreclosure and sale (*Emerson v. La Salle National Bank* (1976), 40 Ill. App. 3d 794, 352 N.E.2d 45), and the guarantor's liability is determinable from the instrument of guaranty only (*Du Quoin State Bank v. Daulby* (1983), 115 Ill. App. 3d 183, 450 N.E.2d 347).

From the foregoing rules, we conclude that the fact the trust deed allowed for the recovery of attorney fees incurred in suing upon the note did not allow the recovery thereof against defendant. Although intervenor could recover such fees, it could do so, by the express terms of the trust deed, only in an action to foreclose the lien granted by the deed. That action would involve only CNB, inasmuch as CNB, as trustee, alone executed the trust deed. It would not involve defendant, he not being a party to the deed but merely a guarantor of the note secured thereby. As such, there was no authority for the award of attorney fees against defendant. The award must be reversed.

In his cross-appeal, plaintiff contends that it is inequitable to charge him on the promissory note by imposing a lien upon the CNB trust, of which he is the sole beneficiary. However, our reversal of the judgment for plaintiff rescinding his assignment of the beneficial interest in the premises has rendered this issue moot. As a result of that reversal, plaintiff has no interest in the premises which is adversely affected by imposing an equitable lien thereon based on the promissory note.

For all of the reasons stated herein, the judgment for Joseph Pedott is reversed and the judgment for the First National Bank of Chicago is affirmed except insofar as it awards attorney fees against Harry Dorman.

Affirmed in part; reversed in part.

RIZZI and WHITE, JJ., concur.