RICHARD JOHNSON *et al.*, Plaintiffs-Appellants, v. KERSTIN JOHNSON, n/k/a Kerstin Sagerstrom, Defendant-Appellee.

First District (3rd Division)   No. 1—92—0485

Opinion filed March 31, 1993.—Rehearing denied May 4, 1993.

Riccardo A. Di Monte and Paula S. Goldberg, both of Di Monte & Lizak, of Park Ridge, for appellants.

David R. Herzog and Steven Shamash, both of Layfer, Cohen & Handelsman, Ltd., of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs, Richard and Olga Johnson, sought recovery on a $38,000 note dated March 1985 and executed by Donald Johnson, plaintiffs' son, and defendant, Kerstin Johnson, n/k/a Kerstin Sagerstrom, plaintiffs' former daughter-in-law and the former wife of Donald Johnson. The trial court entered judgment against plaintiffs

on the $38,000 note and in favor of plaintiffs for a separate $5,000 loan made subsequent to the execution of the 1985 instrument.

On appeal, plaintiffs assert that the trial court erred in denying them recovery on the note and that under the provisions of the Uniform Commercial Code (UCC) past consideration is sufficient consideration to support a negotiable instrument (Ill. Rev. Stat. 1985, ch. 26, pars. 3—307, 3—408). Alternatively, plaintiffs contend that sufficient consideration existed so as to permit recovery based on contract and that the trial court's order was against the manifest weight of the evidence.

Defendant urges that we do not consider plaintiffs' first issue because the amended complaint upon which the trial was based does not sound in an action under the UCC.

For the reasons which follow, we find that plaintiffs did not waive the right to present arguments based on the UCC, but that the document at issue fails to satisfy the statutory requirements necessary to be a negotiable instrument under the UCC because it fails to state a sum certain as required by section 3—104 (Ill. Rev. Stat. 1985, ch. 26, par. 3—104). Moreover, plaintiffs' claims fail under a contract theory because the evidence failed to establish that defendant received consideration for the note.

The document at issue is entitled "Promissory Note" (hereinafter Note) in the face amount of $38,000, dated March 1985, and signed by Donald Johnson and defendant. The Note states that the signatories promise to pay plaintiffs interest monthly in a sum "at the rate of 2½% below prime rate per centum per annum on the unpaid balance until paid in full." The monthly payments stopped in January 1990.

On June 19, 1990, plaintiffs filed their original complaint to recover on the Note referring to it as a promissory note. Thereafter defendant filed a motion for judgment on the pleadings contending that plaintiffs could not recover under a UCC theory because the underlying instrument is not negotiable. Rather than respond to the motion, plaintiffs filed an amended complaint referring to the Note as an agreement, apparently abandoning their claim under the UCC and proceeding on a contract theory.

At trial, Donald Johnson testified that he and defendant married in 1964, divorced in January 1989, and borrowed a total of $38,000 from his parents, plaintiffs, over a three-year period beginning when the couple acquired a business known as Lee's Draperies in February 1982 and ending when they signed the Note in March 1985.

Donald testified that $25,000 of the $38,000 loan was used to purchase the business in February 1982 and the $25,000 check was prob-

ably made out to him alone. The remainder of the loan was used for various purposes, such as household expenses, real estate taxes on their home, a "capital gains problem" (approximately $7,500) incurred through the sale of a previous house, and for rent and real estate taxes connected with the business.

Since the $38,000 loan was not made in one lump sum, Donald explained that the money came in increments by checks made out to Donald most of the time. Although he speculated that some of the checks were payable jointly to himself and defendant, Donald could not recall any specific time where the check was made out in joint names.

Interest payments were made on the loan until January 1990 but no amount of the principal of the loan has been repaid. Donald stated that payments were made either from his personal checking account or the business checkbook but most of those records are now lost. Defendant produced two personal checks which were admitted into evidence. The checks named only Donald, not defendant, and were both dated May 18, 1989, and made payable to Richard Johnson. One check was made out for $250 and the other for $150. Donald testified that these two checks constituted interest payments for two months. Donald understood at the time he signed the Note that he was responsible to make the payments.

According to Donald's testimony, he and defendant were joint owners of Lee's Draperies between 1982 and 1989, and they derived their financial support from the income of this business. He testified that stock certificates of the corporation were issued to defendant in her name but none were offered in evidence.

In contrast, defendant testified that she did not know whether she owned any stock. Defendant testified that Donald purchased Lee's Draperies in 1982, she worked as a salesperson at the business, and her name appeared on the business papers as an officer of that corporation. However, defendant stated that she was not a director of the corporation.

Donald further testified that when he and defendant divorced in January 1989, he was awarded all the rights to the business. Lee's Draperies went "bankrupt" in October or November 1989. Donald was hospitalized at the Elgin Mental Hospital from about November 1989 to January 1990. Donald filed for personal bankruptcy in 1990 and was discharged from his obligation on the Note.

Donald testified that defendant signed the Note "because the money that was loaned to us was loaned to us on a joint basis for a business that we were both joint partners in" and for personal finan-

cial problems. Although Donald believed his parents would not have lent the money if defendant had not signed the Note, the Note was signed long after the funds were given to Donald.

According to his testimony, Donald borrowed an additional $5,000 from his parents after 1985 to try to save the business and the funds went into the business account. The $5,000 loan has not been paid.

Defendant testified that Lee's Draperies was her sole source of income from 1982 to 1989 and she used the money she earned from the business to pay household bills. Both defendant and Donald had health insurance through the business. During 1985, the business owned two cars which were used by Donald and defendant. Although authorized to sign checks on the corporate checking account, defendant does not recall ever signing any checks for Lee's Draperies.

Defendant was not aware that plaintiffs had given Donald $25,000 in 1982 and that Donald was making interest payments to plaintiffs from 1982 to 1985. Prior to executing the Note in 1985, the parties had discussed the possibility that Donald's father, plaintiff Richard Johnson, would lend money to Donald for the drapery store but no specific amount of money was discussed. Defendant acknowledged that she signed the Note although she recalled that it was undated and no amount was stated.

Defendant understood that Donald was to make the payments on the Note and Donald never asked her to make any payments. Defendant does not know if some of the money borrowed from plaintiffs was deposited in the corporate checking account.

Defendant testified that she never received any money from plaintiffs, never saw or endorsed a check from plaintiffs, never made any payments to plaintiffs, and never had any documents relating to or stock certificates from Lee's Draperies.

At the conclusion of the bench trial, plaintiffs moved to amend their pleadings to conform to the proof pursuant to section 2—616(c). (Ill. Rev. Stat. 1989, ch. 110, par. 2—616(c).) The motion sought to amend the complaint to allow recovery of the additional $5,000 loan as evidenced by Donald's testimony at trial.

On October 23, 1991, the trial court entered an order granting plaintiffs' motion to amend the pleadings and denying plaintiffs' request for attorneys fees and costs. The trial court entered judgment in favor of plaintiffs in the amount of $5,000.

On appeal, plaintiffs advance several arguments based on the UCC: (1) the trial court failed to recognize that consideration is presumed in an action on a validly executed negotiable instrument (Ill. Rev. Stat. 1985, ch. 26, par. 3—307) and defendants failed to rebut

this presumption; (2) section 4—408 provides that no additional consideration is required when a note is given as security for an antecedent obligation (Ill. Rev. Stat. 1985, ch. 26, par. 3—408), *i.e.*, the money given to Donald before the Note was signed in 1985; and (3) even if defendant received no consideration in exchange for the promissory note, she is liable as an accommodation maker (Ill. Rev. Stat. 1985, ch. 26, par. 3—415).

Defendant raises the threshold question by contending that plaintiffs have waived the right to assert on appeal a theory of recovery based on the UCC. Defendant argues that the issues in this appeal are framed exclusively by plaintiffs' amended complaint which pleaded a breach of contract theory.

Initially we note that neither complaint filed by plaintiffs specifically alleged a particular theory of recovery, either UCC, contract or otherwise. Moreover, the Note was attached to both complaints and the exhibit controls over the complaint where allegations in the complaint conflict with facts contained in the exhibit. *McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 460, 455 N.E.2d 103; *W.H. Lyman Construction Co. v. Village of Gurnee* (1980), 84 Ill. App. 3d 28, 32, 403 N.E.2d 1325.

Generally, issues not presented to or considered by a trial court are deemed waived on review. (*Palomar v. Metropolitan Sanitary District* (1992), 225 Ill. App. 3d 182, 187, 587 N.E.2d 1067.) However, courts have framed the waiver rule in terms of issues, arguments and theories. *Baker v. Collins* (1963), 29 Ill. 2d 410, 415, 194 N.E.2d 353 (a claim that "was neither alleged in the complaint nor set up on their theory of the case" cannot be considered on appeal); *Johnson v. Hilton Hotel Corp.* (1989), 190 Ill. App. 3d 197, 200, 546 N.E.2d 617 (in an attempt to hold a parent company liable for the actions of its subsidiary in a personal injury action, the plaintiff "waived any claim that [the parent company's] liability can be predicated upon the theory of piercing the corporate veil, as he failed to raise this theory below *in any form*") (emphasis added); *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.* (1983), 116 Ill. App. 3d 1043, 1052, 452 N.E.2d 804 ("[i]ssues and arguments which were not presented to or considered by the trial court cannot be raised for the first time on review"); *G & W Electric Co. v. Joslyn Manufacturing & Supply Co.* (1984), 127 Ill. App. 3d 44, 47, 468 N.E.2d 449 ("[a] claim never alleged in the complaint nor set up in plaintiff's theory of the case at trial cannot be considered on appeal").

■ A review of the record establishes that plaintiffs repeatedly raised arguments based on the UCC, defendants responded to such

arguments, and the trial court heard and considered such arguments. At the beginning of trial, plaintiffs submitted a trial brief specifically stating "Article 3 of the Uniform Commercial Code controls this case." The transcript of the trial held on August 21, 1991, reveals that after the parties rested their respective case, the trial court questioned the attorneys on certain issues presented by the case, including the negotiability of the Note. Following their discussion, the trial judge stated that he would take the matter under advisement and requested the attorneys to file additional points and authorities. At the next hearing on October 23, 1991, the parties again argued the issue of the negotiability of the Note. In their post-trial motion, plaintiffs reiterated their UCC arguments, and in the subsequent hearing on the motion, the trial court again heard arguments by the parties on the UCC. Accordingly, we believe that plaintiffs have not waived consideration of their UCC arguments on appeal because such issues were clearly raised, argued, and considered by the trial court.

However, to consider the substance of plaintiffs' UCC arguments, we must first determine whether or not the Note at issue constitutes a negotiable instrument because article 3 of the UCC only applies to a negotiable instrument.

■■ Section 3—104 enumerates the requirements for a document to constitute a negotiable instrument.

"(1) Any writing to be a negotiable instrument within this Article must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a *sum certain* in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 26, par. 3—104.)

The sole dispute in the present case is whether or not the sum certain requirement has been satisfied.

The language contained in the Note provides that the sum payable includes the principal amount "with interest from the date at the rate of 2½% below prime rate."

Plaintiffs assert that this language meets the sum certain requirement for a negotiable instrument while defendant contends otherwise.

■■ The UCC does not provide a definition for "sum certain." However, section 3—106 provides that the negotiability of an instru-

ment is not impaired where the sum payable is contingent on other stated factors.

> "The sum payable is a sum certain even though it is to be paid
>> (a) with stated interest or by stated installments; or
>> (b) with stated different rates of interest before and after default or a specified date; or
>> (c) with a stated discount or addition if paid before or after the date fixed for payment; or
>> (d) with exchange or less exchange, whether at a fixed rate or at the current rate; or
>> (e) with costs of collection or an attorney's fee or both upon default." (Ill. Rev. Stat. 1989, ch. 26, par. 3—106.)

Comment 1 to section 3—106 explains that to constitute a "sum certain," the sum payable must be determinable from the face of the document.

> "It is sufficient that at any time of payment the holder is able to determine the amount then payable from the instrument itself with any necessary computation. *** The computation must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest 'at the current rate.'" Ill. Ann. Stat., ch. 26, par. 3—106, Uniform Commercial Code Comment, at 38 (Smith-Hurd 1963).

In accordance with these UCC provisions and comments, courts have refused to recognize an instrument as negotiable where the sum payable can only be calculated by reference to a source outside the instrument. *National Union Fire Insurance Co. v. Alexander* (S.D.N.Y. 1989), 728 F. Supp. 192, 200, citing *Morris v. Columbia National Bank* (N.D. Ill. 1987), 79 Bankr. 777 (interest at 3% over prime rate renders note nonnegotiable); *Northern Trust Co. v. E.T. Clancy Export Corp.* (N.D. Ill. 1985), 612 F. Supp. 712 (interest at ½% above prime renders note nonnegotiable); *Centerre Bank v. Campbell* (Mo. App. 1988), 744 S.W.2d 490 (interest that "may vary with bank rates charged" to payee renders note nonnegotiable); *A. Alport & Son, Inc. v. Hotel Evans, Inc.* (1970), 65 Misc. 2d 374, 317 N.Y.S.2d 937 (interest "at bank rates" renders note nonnegotiable); *Taylor v. Roeder* (1987), 234 Va. 99, 101, 360 S.E.2d 191, 192 (interest at "[t]hree percent (3.00%) over Chase Manhattan Prime to be adjusted monthly" renders note nonnegotiable); 4 Hawkland, U.C.C. Series §3—106:03, at 95 n.5 (1984); 2 Hart & Willier, Bender's U.C.C. Series §2.11[2], at 2—103 (19___); Leary, U.C.C. Handbook 95 (19___); but see *Goss v.*

*Trinity Savings & Loan Association* (Okla. 1991), 813 P.2d 492 (a note with an adjustable interest rate tied to the average yield on U.S. Treasury Securities (T-bills) is a negotiable instrument).

"Courts and U.C.C. commentators have agreed that an interest provision that cannot be determined without reference to the prime rate, even if it specifies the prime rate of a particular bank, renders a note nonnegotiable, because the purchaser of the note must look beyond the face of the note to determine how much is owed on the note at the time of payment." *National Union Fire Insurance Co. v. Cooper* (S.D.N.Y. 1989), 729 F. Supp. 1423, 1436-37; *National Union Fire Insurance Co. v. Tegtmeier* (S.D.N.Y. 1987), 673 F. Supp. 1269, 1272 (and cases cited therein).

■ The Note in the present case merely states that the sum payable includes the principal amount "with interest from the date at the rate of 2½% below prime rate." The Note, while requiring us to go beyond its four corners, does not even direct us to a source where we might determine whose "prime rate" we should employ to calculate interest. Since the sum payable is impossible to determine from this bare language, such statement is not sufficient to render the note negotiable.

Plaintiffs' reliance on *Klehm v. Grecian Chalet, Ltd.* (1987), 164 Ill. App. 3d 610, 518 N.E.2d 187, is unpersuasive since *Klehm*, unlike the present case, involved an instrument providing for specific times for varying the rate, limitations as to floor and ceiling of the rate, specific sources to reference, and the rate to be charged in the absence of such sources.

Additionally, plaintiffs argue that the Illinois General Assembly amended the UCC in 1992 and that a variable rate of interest may now be determined by "reference to information not contained in the instrument." Plaintiffs rely on section 3—112(b) of the UCC, which became effective on January 1, 1992. Ill. Rev. Stat. 1991, ch. 26, par. 3—112(b) (eff. January 1, 1992).

In the case at bar the amendment did not become effective until several months after the entry of judgment.

This amendment to the UCC affects the manner in which we construe commercial paper. It establishes new criteria for defining negotiable instruments. It is clearly substantive in nature, and amendatory acts will be construed as prospective where the change is substantive rather than procedural (*People v. Fiorini* (1991), 143 Ill. 2d 318, 333, 574 N.E.2d 612; *Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 522 N.E.2d 1195; *Cooper v. Chicago Transit Authority* (1991), 224 Ill. App. 3d 321, 586 N.E.2d 575; *American*

*National Bank & Trust Co. v. Anchor Organization for Health Maintenance* (1991), 210 Ill. App. 3d 418, 423-24, 569 N.E.2d 128; *Falato v. Teachers' Retirement Systems* (1991), 209 Ill. App. 3d 419, 425, 568 N.E.2d 233; *Young v. Chicago Transit Authority* (1990), 209 Ill. App. 3d 84, 89, 568 N.E.2d 18).

While we believe that the 1992 amendment has no retroactivity, at least one State (New Jersey) has adopted a contrary view. (*Carnegie Bank v. Shalleck* (1992), 256 N.J. Super. 23, 606 A.2d 389.) Where the note was executed in 1989, the trial held in 1990, and the New Jersey UCC amended in 1992, the New Jersey court determined that the amendment was curative, embracing the expectations of the parties. With remarkable casuistry, the New Jersey court suggests that as an exception to the nonretroactivity rule the amendment attempts to improve a statutory scheme and bring the law into harmony with the expectations of the parties and the law in the commercial marketplace. *Carnegie Bank*, 256 N.J. Super. at 40, 606 A.2d at 397-98.

Applying such retroactivity does just the opposite. It is generally unfair and makes the parties unsure of the bargain they have struck. The New Jersey court has contorted the rules of statutory construction to meet the exigencies of current leading practices. In Illinois, we do not so bend.

Had our General Assembly desired, it could have designated that the amendment be given retroactive application. Had the American Law Institute which promulgated the uniform act had such a desire, retroactivity could have been included in the comment.[1]

Since we find that the sum payable is uncertain, the Note is nonnegotiable and thus outside the purview of the UCC. *Northern Trust Co.*, 612 F. Supp at 715.

Accordingly, plaintiffs' assertion that defendant failed to rebut the presumption of consideration which attaches to a validly executed negotiable instrument (*Pedott v. Dorman* (1989), 192 Ill. App. 3d 85, 93, 548 N.E.2d 541) is inapplicable as is the use of an antecedent debt as consideration and the liability of an accommodation maker. Instead, the principles of contract law govern.

Under a contract theory, the plaintiffs carry the burden to prove all elements of a contract including consideration. (*Mannion v. Stallings & Co.* (1990), 204 Ill. App. 3d 179, 186, 561 N.E.2d 1134.) Any

---

[1]In 1990, the American Law Institute approved the provisions of section 3—112(b) and at least 23 States have now adopted the amendment. *Carnegie Bank*, 256 N.J. Super. at 37, 606 A.2d at 396 (21 States cited therein plus now New Jersey and Illinois).

act or promise which is of benefit to one party or disadvantage to the other party is sufficient consideration. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634.) However, the general rule dictates that if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract. *Gladstone v. McHenry Medical Group* (1990), 197 Ill. App. 3d 194, 202, 553 N.E.2d 1174.

Plaintiffs assert that defendant received actual and sufficient consideration in exchange for the Note because she received benefits by the purchase of the jointly owned business and the payment of her personal debts. On the other hand, defendant contends that the evidence established that the money from plaintiffs went to Donald alone and the $38,000 had been loaned to Donald long before the Note was executed by defendant.

The trial court found the evidence to be "very weak" and conflicting, and the testimony of Donald to be suspect since he was already discharged from any obligation on the Note due to his bankruptcy proceedings and had "an ax to grind" with his ex-wife, defendant.

Whether there is consideration for an agreement is a question of law for the court. (*Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855, 861, 558 N.E.2d 115; *Lesnik v. Estate of Lesnik* (1980), 82 Ill. App. 3d 1102, 403 N.E.2d 683.) The weight to be given conflicting testimony in a bench trial is a matter for the trial court and its findings will not be disturbed on review unless they are against the manifest weight of the evidence, *i.e.*, the opposite conclusion must be clearly evident. (*Trident Industrial Products Corp. v. American National Bank & Trust Co.* (1986), 149 Ill. App. 3d 857, 865, 501 N.E.2d 273.) If there is evidence to support the trial court's judgment, a reviewing court must affirm because it is not sufficient to show that the record will support a contrary decision. *Trident Industrial Products*, 149 Ill. App. 3d at 865.

■ Our review of the record discloses that the trial court's decision was not against the manifest weight of the evidence.

The record lacks any physical evidence to show when and how any money changed hands between anyone. The testimony of the only two witnesses, Donald and defendant, was contradictory and, at best, was unclear as to whether anything was made payable to defendant at any time.

Donald testified that subsequent to the execution of the Note, an additional $5,000 was advanced to him and defendant. The trial court awarded $5,000 to plaintiffs and the propriety of that portion of the order is not before us. Nothing in the record suggests a nexus be-

tween the requirement that the Note be executed as a condition for disbursement of the later sum.

For all the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

TULLY, P.J., and RIZZI, J., concur.