A. EPSTEIN AND SONS INTERNATIONAL, INC., Plaintiff-Appellant, v. EPPSTEIN UHEN ARCHITECTS, INC., Defendant-Appellee.

First District (2nd Division)    No. 1—09—1307

Opinion filed January 11, 2011.—Rehearing denied March 1, 2011.—Modified opinion filed March 8, 2011.

Much Shelist Denenberg Ament & Rubenstein, P.C., of Chicago (Scott R. Fradin, of counsel), for appellant.

Schuyler, Roche & Crisham, P.C., of Chicago (Jeffrey T. Kubes, Jean M. Prendergast, Thomas W. Mulcahy, and Margaret M. Fitzsimmons, of counsel), for appellee.

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion.

## OPINION

Plaintiff, A. Epstein & Sons International, Inc. (Epstein), appeals the judgment of the circuit court of Cook County granting defendant, Eppstein Uhen Architects, Inc.'s (EUA) motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 2008)) and denying Epstein's motion for partial summary judgment. We reverse the judgment of the circuit court granting EUA's motion for summary judgment and affirm the circuit court's judgment denying Epstein's motion for partial summary judgment. We find that the terms in the parties' first alleged contract are ambiguous and require the aid of extrinsic evidence to determine the parties' intent. Therefore, summary judgment was not proper.

## JURISDICTION

On April 24, 2009, the circuit court entered its final judgment denying Epstein's motion to reconsider. On May 22, 2009, Epstein filed its notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

## BACKGROUND

In December of 2002, Franciscan Communities, d/b/a St. Joseph Home of Chicago, hired EUA to provide professional design services for a construction project in Chicago, Illinois. EUA then called upon Epstein to submit a proposal for it to provide engineering design services for Franciscan's construction project. Epstein submitted a signed proposal on November 6, 2002, and EUA accepted it by signing it on December 2, 2002. Displeased with EUA's performance on its construction project, Franciscan filed an arbitration demand against EUA in December of 2007. In turn, EUA filed an arbitration demand upon Epstein in January 2008, asserting claims arising out of Franciscan's arbitration demand.

Epstein filed a petition to stay arbitration and complaint for declaratory judgment and injunctive relief in May of 2008. Epstein attached two documents to its petition that are at the center of the dispute between the parties. The first document, titled "MEPFP Engineering Services Proposal" is dated November 6, 2002 (November document). The second document attached to Epstein's petition is dated December 9, 2002, and titled "Architect-Consultant Agreement" (December document). The dispute is whether Epstein is bound by an arbitration provision which is set out in a third unattached document, AIA Document C141—1997 (AIA provision) that the December document purports to incorporate by reference.

The November document described the project; outlined the engineering design services, administrative services, and structural engineering services plaintiff agreed to provide and in what manner; as well as set out fees and expenses. The November document also attached and incorporated terms and conditions of service. The terms and conditions of service state that EUA will be bound by the terms of the November document once it is executed. Furthermore, any modifications to those terms must be made in writing. Nothing in the November document mentions that disputes between the parties will be resolved in arbitration. The relevant provisions of the November document's terms and conditions of service are as follows:

"1. These Terms and Conditions of Services are an integral part of the Proposal dated November 6, 2002 between [Epstein] and [EUA].

2. *** Upon execution of this Proposal by [EUA] ***, [EUA] shall be bound by the Proposal and all of these Terms and Conditions of Service ***. Any additions, deletions, or changes to the Proposal or these Terms and Conditions of Services shall be in writing and executed by both Parties.

3. (a) The services described in the Proposal constitute the Scope of Services that Epstein agrees to provide to [EUA] under this Agreement.
***

(c) If, during Epstein's performance of the Scope of Services, [EUA] requests, in writing, a change in the Scope of Services ***, such Change in Service and method of compensation shall be agreed to in writing prior to Epstein being obligated to undertake such Change in Service. If Epstein performs such Change in Service and this Subparagraph (c) has not been complied with, Epstein shall be compensated at its then prevailing hourly rates.

(d) The Scope of the Project is set forth in the Proposal. The scope of the Project shall not be altered without the written consent of both Epstein and [EUA]. In the event that the parties consent to alter the scope of the Project, the Scope of Services and the fees and charges for the Project as set forth in this Agreement shall be adjusted in accordance with subparagraph (c) of this Paragraph 3.

* * *

21. This Agreement constitutes the entire integrated Agreement between [EUA] and Epstein, and supercedes all prior negotiations, representations, or agreements, whether written or oral except as are specifically incorporated into this Agreement by reference. This

Agreement may not be amended except by written instrument signed by both [EUA] and Epstein.

22. This Agreement shall be governed by the laws of the State of Illinois.''

Epstein signed the November document on November 6, 2002, and EUA signed it on December 6, 2002.

The December document stated that Epstein agreed to provide ''Civil, Structural, and MEP-FP engineering consulting design services'' for a fixed fee of $275,000. The December document also outlines how the construction documents are to be produced and stored, as well as billing and insurance provisions. Most importantly, the December document referenced an unattached document, the AIA provision, that requires disputes between the parties to be settled by arbitration. The December document provides in pertinent part as follows:

''Said Engineering Services shall be provided in accordance with the requirements set forth in the AIA Document C141—1997 Standard Form of Agreement Between [EUA] and [Epstein] in its entirety (Pages 1-14) for the engineering service disciplines named above including such additional amendments as listed below:

A. Consulting services shall be as specified in [Epstein's] letter dated November 6, 2002.''

EUA signed the December document on December 9, 2002, and Epstein signed it on December 16, 2002. Although not attached to the December document originally, Epstein attached the AIA provision to its petition, which in relevant part provided:

''§9.2.1 Any claim, dispute or other matter in question arising out of or related to this Agreement shall be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation ***.''

In its petition, Epstein alleged that it only signed the December document because it was told by EUA's project manager that the December document was necessary in order to process payments to Epstein. Epstein alleged that the December document identified the same scope of services as the November document, the fees were the same, and EUA did not provide any consideration for Epstein's agreement to submit to arbitration. In count I of its petition, Epstein sought a stay of arbitration pursuant to section 2 of the Illinois Uniform Arbitration Act (710 ILCS 5/2(b) (West 2008)), alleging that the November document did not contain any provisions compelling arbitration. In count II of its petition, Epstein sought a declaratory judgment, requesting the circuit court enter a judgment declaring that the November document ''is the agreement between Epstein and EUA governing the provision of services by Epstein on the project'' and

that the December document "does not constitute a valid and binding modification" to the November document and that the November document does not require disputes between the parties to be submitted to arbitration.[1]

On November 10, 2008, EUA filed a motion for summary judgment. 735 ILCS 5/2—1005 (West 2008). In its motion, EUA alleged that its arbitration demand was based solely on the December document and that it is irrelevant that the November document does not contain an arbitration clause. EUA alleged further that because the arbitration demand was based solely on the December document, and not the November document, there is no ripe case or controversy between the parties relative to the November document. Epstein responded that the December document is not a valid and binding agreement because it lacks consideration, namely, that EUA has not shown how Epstein received any benefit from the December document that it had not already received in the November document. Epstein responded further that even if the December document is the controlling agreement between the parties, it does not contain an express agreement to arbitrate. Instead, Epstein argues that the December document is ambiguous. EUA replied that the December document is not ambiguous and that it contained adequate consideration, namely, a flat fee of $275,000, the agreement to arbitrate, as well as insurance and indemnification provisions. EUA replied that the plain language of the December document incorporated the AIA provision and that even if the November document is considered a contract between the parties, the December document is a valid modification of the November document.

Also on November 10, 2008, Epstein filed its own motion for partial summary judgment as to count I of its petition seeking a determination by the circuit court that the December document's reference to the AIA provision is not sufficient to obligate Epstein to submit to arbitration. In doing so, Epstein did not concede that the December document was the operative agreement between the parties, but rather sought a determination that as a matter of law, there is nothing in the December document that would compel arbitration. EUA responded that the plain language of the December document shows an agreement between the parties to submit to arbitration. In its reply, Epstein maintained that the December document does not require it to submit to arbitration because the reference in the December document to the AIA provision was for the limited purpose

---

[1]Epstein's petition included a count III, but Epstein voluntarily dismissed this count on August 29, 2008.

of describing engineering services that Epstein was required to provide, not to compel arbitration.

On January 30, 2009, the circuit court denied Epstein's motion for partial summary judgment and granted EUA's motion for summary judgment. The circuit court found the December document to be the governing contract between the parties and held that the December document contained an agreement to arbitrate. The circuit court reasoned that the November document appeared to be a proposal between the parties. Additionally, the circuit court found that the December document's language was clear and unambiguous that the AIA provision was to be incorporated into the agreement in its entirety. On April 24, 2009, the circuit court denied Epstein's motion to reconsider the circuit court's grant of summary judgment in favor of EUA as to count II of Epstein's petition. Epstein timely appeals.

## ANALYSIS

On appeal, Epstein argues the circuit court erred in granting summary judgment. As to count I, Epstein argues summary judgment was improper because the December agreement's terms on the AIA provision are ambiguous. As to count II, Epstein argues summary judgment was improper because a genuine issue of material fact remained in dispute, namely, which document controlled. Epstein contends the circuit court's finding that the December document was the only agreement between the parties concerned a disputed issue of material fact not appropriately decided at the summary judgment stage. EUA, on the other hand, argues that the circuit court properly entered summary judgment in its favor because the December document is the operative agreement between the parties and its terms requiring arbitration are clear and unambiguous.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2008). In ruling on a motion for summary judgment, the circuit court is to determine whether a genuine issue of material fact exists, not try a question of fact. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). When determining whether a genuine issue of material fact exists, the pleadings are to be liberally construed in favor of the nonmoving party. *Id.* We recognize that "[a]lthough summary judgment can aid in the expeditious disposition of a lawsuit, it remains a drastic means of disposing of litigation and, therefore, should be allowed only where the right of the moving party is clear and free from doubt." *Id.* We review summary judgment rulings *de novo. Id.*

An instrument's legal effect is not "to be determined by the label which it bears or the technical terms it contains." *Bonde v. Weber*, 6 Ill. 2d 365, 377 (1955). Rather, it is the intention of the parties that governs. *Illinois Central R.R. Co. v. Michigan Central R.R. Co.*, 18 Ill. App. 2d 462, 474 (1958). When determining whether a document is a binding contract, we must consider whether the three basic elements of a contract are present, namely, an offer, acceptance, and consideration. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329 (1977). "Consideration consists of some detriment to the offeror, some benefit to the offeree, or some bargained-for exchange between them." *Doyle v. Holy Cross Hospital*, 186 Ill. 2d 104, 112 (1999). However, "if the alleged consideration for a promise has been conferred prior to the promise upon which alleged agreement is based, there is no valid contract." *Johnson v. Johnson*, 244 Ill. App. 3d 518, 528 (1993).

In reviewing the language of a contract, the "circuit court must initially determine, as a question of law, whether the language *** is ambiguous as to the parties' intent." *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990). Where the terms of a contract are clear and unambiguous, the parties' intent must be derived solely from the document. *Id.* If the terms of the alleged contract are ambiguous or capable of more than one interpretation, parole evidence is admissible to determine the parties' intent. *Id.* Summary judgment is not proper where a purported contract contains ambiguous terms, which require admission of extrinsic evidence to interpret them. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992).

The circuit court's finding that the December document controlled was primarily determined by the fact that the November document is titled "proposal." EUA's briefed position was that the November document is a proposal, not a contract. At oral argument, EUA admitted that the proposal was an executed binding contract and our analysis continues with that being a given. Both the November and December documents cannot be reconciled on the issues as to the requirement of arbitration. Epstein maintains that the December document was a formality to insure proper payment, not a modification of the November agreement. EUA argues that the December document is the controlling contract as it modified the November agreement. The intent of the parties is ambiguous, and therefore, parole evidence must be considered in determining the parties' intent behind these documents. Accordingly, summary judgment is not appropriate. *Loyola Academy*, 146 Ill. 2d at 272 (summary judgment not appropriate where an alleged contract is ambiguous and parole evidence is needed to interpret the intent of the parties).

Summary judgment is also not appropriate because the November document raises other fact issues that need to be addressed at trial. Specifically, if the November document is a valid contract, whether the December document is supported by sufficient consideration such that it is a proper modification of that contract is an issue of fact. Epstein argues that any alleged consideration in the December document was illusory because the fee in the December document is the same fee in the November document. EUA argues that the December agreement contains different consideration from that provided in the November document, namely, that EUA agrees to pay Epstein a flat fee of $275,000. The November document contains a fee of approximately $200,000 and a fee structure for expenses. It is not clear if the November document and the December document contain the same fee once expenses are added. This is a genuine issue of material fact that precludes summary judgment. If, as Epstein alleges, the December document was not based on any new consideration, then the December document would not be a valid contract. See *Johnson*, 244 Ill. App. 3d at 528. In construing the pleadings against EUA as the movant, the issue of consideration is a material fact that is disputed by the parties and, thus, also precludes summary judgment.

A review of the record shows that before the circuit court, EUA maintained that the November document was a proposal, as opposed to an agreement between the parties. EUA additionally briefed that as fact in its response to this appeal. However, at oral argument, EUA conceded that the November document was in fact an agreement between the parties. This discrepancy concerns us. The circuit court may well have ruled differently had the court had the benefit of the concession of the November document being an agreement between the parties as opposed to a proposal. Due to this discrepancy, as well as the need for the aid of extrinsic evidence to determine the intent of the parties, summary judgment is not proper in this case.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.