FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver for the New
Connecticut Bank and Trust Company,
N.A.

v.

M.F.P. REALTY ASSOCIATES, Felix
T. Charney, Michael R. Wachob,
and P.L. Discala.

Civ. No. 5:91CV434(TFGD).

United States District Court,
D. Connecticut.

Dec. 14, 1994.

Paul Gilmore, Edwards & Angell, Hartford, CT, for FDIC.

Michael McCabe, Depanfilis & Vallerie, Norwalk, CT, for P.L. Discala.

Dennis Anderson, Zeisler & Zeisler, Bridgeport, CT, for Felix Charney, MFP Realty Associates and Michael Wachob.

DALY, District Judge.

After careful review of the parties' submissions and objections, Magistrate Judge Eagan's Recommended Ruling is hereby AFFIRMED, APPROVED, and ADOPTED.

So ORDERED.

### RECOMMENDED RULING ON MOTION FOR JUDGMENT OF STRICT FORECLOSURE AFTER DEFAULT (# 49)

EAGAN, United States Magistrate Judge.

#### I. Background

On or about January 16, 1992, the Court entered a default against M.F.P. Realty As-

sociates (hereinafter "MFP Realty") and all subsequent encumbrancers of property located at 10 Spruce Street in Fairfield, Connecticut. The plaintiff, the Federal Deposit Insurance Corporation, as Receiver for the New Connecticut Bank and Trust Company, N.A. (hereinafter the "FDIC"), has moved for the entry of a judgment of strict foreclosure against defendant-mortgagor, MFP Realty, and all remaining defendants who have an interest in the premises subsequent to the FDIC's interest.

■ As the moving party, the FDIC has the initial responsibility of informing the Court of the basis for its motion for summary judgment and of identifying those parts of the record it believes demonstrate the absence of a genuine issue of material fact. *See Latimer v. Smithkline and French Laboratories,* 919 F.2d 301, 303 (5th Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Where, as here, a motion seeking summary disposition is supported by affidavits and other documentary evidence, the party opposing that motion must set forth specific facts showing that there is a genuine, material disputed issue. *See King Service, Inc. v. Gulf Oil Corp.,* 834 F.2d 290, 295 (2d Cir.1987). Accordingly, on the issues they dispute, the defendants must come forward with enough evidence to support a verdict in their favor. They cannot defeat the FDIC's motion merely by presenting a metaphysical doubt, conjecture or surmise concerning the facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Only disputes over facts that might affect the outcome of the suit will properly preclude the entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Upon review of the Stipulation of Facts filed January 12, 1994 by the FDIC, MFP Realty and Felix T. Charney, and all other submissions of the parties, the Court finds the following facts. *See* Local Rule 9(c).

On April 20, 1987, MFP Realty and The Connecticut Bank and Trust Company, N.A. ("CBT") executed a commercial mortgage note by which MFP Realty borrowed $520,-000. To secure the note, MFP Realty mortgaged to CBT 10 Spruce Street. In addition, defendants Felix T. Charney, Michael R. Wachob and P.L. DiScala jointly and severally guaranteed MFP Realty's obligation.

On September 1, 1990, MFP Realty defaulted on its payment of the installment of principal and interest due. CBT declared the entire outstanding indebtedness due and payable on December 28, 1990.

On January 6, 1991, the Comptroller of the Currency determined that CBT was insolvent and appointed the FDIC as its receiver. Thereafter, a new national banking association, the New Connecticut Bank and Trust Company, N.A. (hereinafter "New CBT") was formed, and the FDIC assigned its assets to New CBT.

New CBT commenced this foreclosure action on or about May 24, 1991. However, on July 12, 1991, the Comptroller of the Currency appointed the FDIC as Receiver of the New CBT. In its capacity as receiver of New CBT, the FDIC succeeded to all New CBT's assets and liabilities, including those which are the subject of this suit.

According to the FDIC, for the period during which New CBT conducted banking operations, it adjusted the rate on the subject loan, based upon 3% over its periodically set prime rate. Similarly, following the dissolution of New CBT and the FDIC's appointment as receiver thereof, RECOLL Management Corporation, as the FDIC's attorney-in-fact, adjusted the rate on the subject loan, based upon 3% over the prime rate of Fleet Bank, N.A., the prime rate which the FDIC has adopted as the prime rate that governs variable rate loans for the FDIC as receiver of New CBT.

Based upon similar changes in Fleet Bank's prime rate, the FDIC has identified the following interest rates are applicable to the instant action: 10.5% from November 14, 1991 through December 24, 1991; 9.5% from December 24, 1991 through July 5, 1992; and 9% from July 6, 1992 to the present. The FDIC further claims entitlement to default interest in an addition amount of one percent over and above the variable rate otherwise applicable under the note. However, the

FDIC has not identified the interest rates applicable between the date of default and the date New CBT was placed in receivership.

Because the Court has entered defaults against the defendants, the remaining issues in this suit relate to the amount of the debt due. According to the FDIC's motion, the following represents that defendants' outstanding obligation as of January 12, 1994:

| | |
|---|---|
| Principal | $504,136.20 |
| Past due note interest | $165,160.16 |
| Past due default interest | $ 17,476.02 |
| Past due late charges | $ 8,788.77 |
| Property taxes paid by FDIC | $ 6,917.12 |
| Attorneys fees | $ 10,982.33 |
| Environmental fees | $ 1,908.00 |
| Appraisal fees | $ 9,500.00 |
| | |
| Total as of 1/12/94 | $725,213.60 |
| | |
| Note interest per diem | $ 126.03 |
| Default interest per diem | $ 14.00 |

*See* FDIC's Motion for Judgment of Strict Foreclosure After Default (filed May 11, 1994) at 6. In addition, the FDIC has filed a Bill of Costs in which it seeks sheriff's fees in the amount of $328.20 and title search fees in the amount of $150.00.

By the instant motion, the FDIC seeks a judgment of strict foreclosure on 10 Spruce Street. The FDIC has submitted an appraisal which finds the premises to have a fair market value of $325,000 as of November 16, 1993. *See* Affidavit of Appraiser (filed December 1, 1993).

Defendants MFP Realty and Felix T. Charney admit the accuracy of the figures computed in the parties' stipulation. *See* Defendants' Memorandum in Opposition to Plaintiff's Claimed Indebtedness (filed May 11, 1994) (hereinafter "Memorandum in Opposition") at 6. Nevertheless, they specifically contest their actual liability on the following portions of the aforementioned calculations: appraisal fees; environmental fees; attorney's fees; late charges; and interest and default interest. *See* Notice of Intent to Contest Indebtedness (filed May 9, 1994).

## II. Discussion

### A. Propriety of Strict Foreclosure

■ In Connecticut, it is within the Court's discretion whether to order fore-

closure by sale or strict foreclosure. *See* Conn.Gen.Stat. § 49–24. It is undisputed that the present value of 10 Spruce Street does not exceed the amount presently outstanding on the note. Absent any persuasive equitable arguments to the contrary, a strict foreclosure appears appropriate. *Cf. Fidelity Trust Co. v. Irick,* 206 Conn. 484, 538 A.2d 1027 (1988).

### B. Appraisal Fees

The FDIC claims appraisal fees in the amount of $9,500. The parties' stipulation further specifies that these fees result from three appraisals: one dated August 27, 1990 costing $3,000, one dated August 23, 1991 costing $3,000 and one dated June 2, 1993 costing $3,500.

■ On its face, this request seems excessive. Moreover, the defendants claim that the FDIC is not entitled under the note or mortgage to appraisal fees, and the FDIC has failed to identify any provision in the note or mortgage instruments which authorizes its recovery of such fees. In general, the Court has no duty to search the record to establish the existence or non-existence of a genuine issue of material fact. Rather, it is the FDIC's burden to affirmatively show its entitlement to recovery. *See, e.g., Borthwick v. First Georgetown Securities, Inc.,* 892 F.2d 178, 181 (2d Cir.1989); *Nissho–Iwai American Corp. v. Kline,* 845 F.2d 1300 (5th Cir.1988). Accordingly, the FDIC's request for appraisal fees of $9,500 is disallowed without prejudice to renew if and when it makes an application for a deficiency judgment.

### C. Environmental Fees

■ The FDIC also requests $1,908 in charges incurred for obtaining an environmental report and evaluation of the subject property. Again, the FDIC has failed to identify any contractual basis for its request. Accordingly, the FDIC's request for environmental fees of $1,908 is disallowed without prejudice to renew if and when it makes an application for a deficiency judgment.

### D. Attorneys Fees

■ The plaintiff has claimed attorneys fees of $10,982.33. While the defendants admit that the FDIC is entitled to recover legal fees reasonably incurred in this foreclosure, they point out that the FDIC has not presented complete documentation for all fees sought.

In this Circuit, "[a]ll applications for attorney's fees, whether submitted by profit-making or non-profit lawyers, for any work done after [June 15, 1983] should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *New York Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir.1983). Having failed to supply appropriate documentation, the FDIC's request for attorneys fees is disallowed without prejudice to renew if and when it makes an application for a deficiency judgment.

### E. Late Charges

■ The FDIC seeks 37 months in late charges from September 1, 1990 through October 29, 1993, for a total of $8,788.77. This Court has held that a plaintiff may not recover late charges once demand for payment has been made upon the defendants. *See The Federal Home Loan Mortgage Corporation v. Cohen, Foster & DiRienzo Associates,* Ruling On Plaintiff's Motion For Deficiency Judgment, Civil No. 5:92CV45(WWE) (D.Conn. April 19, 1994). The reason is that, while a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower. *Id.*

Here, the defendants defaulted on September 1, 1990, and CBT accelerated the debt on December 28, 1990; accordingly, under the note, the defendants are only liable for four months of late charges. Dividing the FDIC's claimed charges of $8,788.77 by 37 months results in a claimed monthly late charge of $237.53. Accordingly, the FDIC is entitled to four months worth of late charges totalling $950.14.

### F. Interest and Default Interest

The commercial mortgage note provides:

If the interest rate shall be variable (the "variable interest rate"), said variable rate shall be three (3) percentage points in excess of the rate of interest announced publicly by The Connecticut Bank and Trust Company, N.A., from time to time, as said Bank's "Prime Rate," on the first day of the new option period, the effective date of such interest change, which variable interest rate shall be adjusted on a daily basis thereafter as the Prime Rate shall change from time to time.

According to the parties' stipulation the major portion of the FDIC's interest calculations are based upon 3% above the prime rate of Fleet Bank. As of May 11, 1994, the FDIC claims interest due of $165,160.16 and default interest of $17,476.02, with claimed interest per diem of $126.03 and default interest per diem of $14.00.

■ The defendants do not challenge the accuracy of the FDIC's computations. Instead, the gravamen of the defendants' challenge to the FDIC's claim of entitlement to the interest is that, because the note bases the interest upon CBT's prime rate, interest under the note cannot be calculated for any period after the FDIC was appointed CBT's receiver. Consequently, the defendants conclude that "[t]his Court should find that the applicable interest rate is three (3%) percent above zero and the applicable default rate is one (1%) percent above that." Memorandum in Opposition at 21–22.

■ On its face, the conclusion urged by the defendants does not comport with the contractual expectations of the parties or with the applicable law. Generally, when interpreting any contract, a court must do its best to give effect to the intent of the parties as evidenced by the writings. *See On Site Energy Corp. v. Sperry Rand Corp.,* 5 Conn. App. 326, 330, 498 A.2d 121 (1985). Here, while the parties may not have foreseen the demise of CBT, they clearly anticipated that the defendant-borrowers would be liable for an amount of interest in excess of 3%. To

accept the defendants' interpretation of this note would, in effect, require this Court to ignore its explicit provisions regarding the application of CBT's prime rate. *Accord FDIC v. Cage*, 810 F.Supp. 745, 747 (S.D.Miss.1993) ("It would be unreasonable to find that the obligors under a note would escape all interest in a circumstance such as this.")

 Moreover, federal law, which now governs this action, supports the conclusion that the FDIC is empowered and entitled to establish an alternate prime rate. *See, e.g., United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) ("This Court has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs."); *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1512–13 (D.C.Cir. 1993) (Federal law applies to claim of attorney-client privilege where RTC filed petition to enforce subpoena duces tecum issued to former law firm which had connections to failed thrift.) Under 12 U.S.C. § 1821(d)(2)(B)(ii), the FDIC, as receiver, assumes the ability to "perform all functions of the institution in the name of the institution which is consistent with the appointment as conservator or receiver...." In the instant case, one such right must necessarily include the right to establish a prime rate called for under the failed institution's note.

Accordingly, several courts which have considered the issue have approved the use of the prime rate of another bank when a note becomes the asset of the FDIC. *See FDIC v. Condo Group Apartments*, 812 F.Supp. 694, 699 (N.D.Tex.1992). Likewise, this Court already has found that the FDIC may substitute an appropriate interest rate to apply to a loan that is based upon the prime rate of a failed bank. *See, e.g., FDIC v. 272 Post Road Associates*, Recommended Ruling on Plaintiff's Motion for Summary Judgment of Strict Foreclosure, Civil No. 5:91CV433(TFGD) (D.Conn. March 11, 1994); *accord FDIC v. Rogers Park I*, 1990 WL 482141 (W.D.Okl.1990) (Under Restatement (2d) of Contracts § 204, when parties have not agreed with respect to an essential contract term, the Court may supply one which is reasonable under the circumstances.) Absent any argument that the applied Fleet Bank prime rate is unreasonable, the Court finds that the FDIC has appropriately applied a substituted interest rate.[1]

 However, the defendants aptly note that the FDIC's submissions concerning interest accrued from September 1, 1990 through January 12, 1991 are insufficient in that the FDIC has not identified the prime interest rate for CBT or the New CBT was during that period. As this Court has observed, "[t]here is simply no authority to support the argument that the defendants cannot put the FDIC to its proof as to the appropriate interest rate under the notes." *FDIC v. Armstrong Mall Associates Limited Partnership*, 1992 WL 175518 at *4 (D.Conn. 1992). Because the parties' stipulation leaves the Court with no way to decipher the how the FDIC derives the various interest rates applied during the period prior to its receivership of New CBT, the request for note and default interest is disallowed without prejudice to renew the request if and when it makes a motion for deficiency judgment.

### Conclusion

The FDIC's Motion for Judgment of Strict Foreclosure After Default is GRANTED. The Court finds that the sum of $512,481.66, which includes principal of $504,136.20, late charges of $950.14, property taxes of $6,917.12 and sheriff and title search fees of $478.20, is due the plaintiff on the debt as of January 1, 1994, with note interest accruing

---

1. In light of the ruling that the Fleet Bank prime rate is appropriate, the Court finds it unnecessary to address the FDIC's alternate argument that Conn.Gen.Stat. § 42a–3–112(b) also may supply an applicable substituted prime rate. The Court notes, however, that § 42a–3–112(b) only applies to negotiable instruments. In a similar context, one court has held that a note which contains an interest provision which can only be determined by referring to a prime rate renders the note nonnegotiable. *See Johnson v. Johnson*, 244 Ill.App.3d 518, 185 Ill.Dec. 214, 614 N.E.2d 348 (1993).

at $126.03 per diem and default interest accruing at $14.00 per diem.

For the purposes of this Motion for Judgment of Strict Foreclosure After Default, the Court finds the value of this premises to be $325,000.

Notwithstanding the entry of the foregoing, this motion is granted without prejudice: (a) the plaintiff's right to renew its request for interest and other fees under the note and mortgage; and (b) to the defendants' right to raise any defense regarding the validity of the plaintiff's claim for a deficiency judgment and to contest any factual finds set forth herein which may be introduced by the plaintiff on such claim for a deficiency judgment, including but not limited to the value of the premises on the date of vesting in the plaintiff.

The FDIC is hereby directed to submit to the Court a proposed order of judgment forthwith.

Any objections to this report and recommendation must be filed with the Clerk of Courts within ten (10) days of the receipt of this recommended ruling. Failure to object to this report and recommendation within ten (10) days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of HHS*, 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 3rd day of June, 1994.