**In re Patricia Ann GUARNIERI,
Debtor.**

No. 02–35554 (LMW).

United States Bankruptcy Court,
D. Connecticut.

Aug. 25, 2003.

James M. Nugent, Esq., Harlow, Adams & Friedman, Milford, CT, for the Debtor.

Martha Croog, Esq., Law Office of Martha Croog, LLC, West Hartford, CT, for Creditor Wells Fargo Bank Minnesota, N.A.

## MEMORANDUM OF DECISION RE: OBJECTION TO CLAIM

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matter before the court is the above-referenced debtor's (the "Debtor") objection to a claim for post-acceleration late charges asserted by the Debtor's mortgage lender in the context of a "cure" and "maint[enance]" of the subject mortgage debt under Bankruptcy Code § 1322(b)(5). This is a core matter within the purview of 28 U.S.C. § 157. The matter has been briefed and argued by the parties, and is now ripe for decision.

## I. BACKGROUND [1]

On or about February 24, 2000, the Debtor and Claire Collier owned real property (the "Property") located at 242 First Avenue, West Haven, Connecticut. About that time, Option One Mortgage Corporation ("OOMC") loaned the Debtor and Ms. Collier the sum of $101,000 pursuant to an adjustable rate note (the "Note") dated February 24, 2000. To secure the Note, the Debtor and Ms. Collier granted a mortgage (the "Mortgage") to OOMC with respect to the Property.[2] The Mortgage was recorded on February 29, 2000 in the West Haven Land Records. Subsequently, OOMC assigned the Note and Mortgage to Wells Fargo Bank Minnesota, N.A. (including its predecessor in interest, "WFBM") by assignment recorded on September 11, 2002.[3] Paragraph 7(A) of the Note provides:

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

Paragraph 18 ("Paragraph 18") of the Mortgage provides in relevant part:

If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale con-

---

**1.** This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to this contested matter by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

**2.** Ms. Collier is a signatory to the Note and Mortgage, is listed in the Debtor's petition as a co-debtor and (apparently) as co-owner of the Property. Neither party has argued that the foregoing fact has significance for the purposes of these proceedings. Accordingly, for simplicity's sake, the Debtor will be treated as if she were, at all relevant times, sole obligor under the Note and Mortgage and sole owner of the Property.

**3.** Hereafter, the Note and Mortgage will be referred to collectively as the "Loan Documents."

tained in the Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default or any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.[4]

The Debtor defaulted under the Loan Documents by failing to make certain payments. WFBM accelerated amounts owing under the Note, and commenced a foreclosure action in respect of the Mortgage in Connecticut Superior Court. On September 23, 2002, the Superior Court entered a judgment of strict foreclosure (the "Judgment"), finding the debt owed to WFBM to be $104,588.06. The Judgment set a law date for the Debtor of December 2, 2002.

The Debtor commenced this case by the filing of a voluntary petition under chapter 13 of the Bankruptcy Code on November 14, 2002.[5] On November 19, 2002, the Debtor filed a chapter 13 plan (Doc. I.D. No. 6, the "Plan") which listed the arrearage due to WFBM in respect of the Mortgage as $6,635.00. The Plan proposed to pay that arrearage and maintain the payment schedule provided for in the Loan Documents over the term of the Plan, all pursuant to 11 U.S.C. § 1322(b)(5).[6] OOMC, servicer and attorney-in-fact for WFBM, filed a proof of claim for WFBM on December 18, 2002 which proof of claim (Claim No. 3) asserts $9,743.82 as the arrearage owed under the Loan Documents.

On January 2, 2003, the Debtor filed an objection to WFBM's proof of claim (Doc. I.D. No. 14, the "Objection") to which WFBM filed a reply (Doc. I.D. No. 17, the "Reply") on January 23, 2003.[7] Although the Debtor originally challenged some of WFBM's attorney's fees, the Debtor has abandoned that issue and here challenges only WFBM's inclusion of pre-petition, post-acceleration late charges (collectively, the "Disputed Charges")[8] in the amounts

---

**4.** Paragraph 17 is the "due-on-sale" provision of the Mortgage.

**5.** Under Connecticut law, filing of the chapter 13 petition automatically reopened the Judgment. *See* Conn. Gen.Stat. § 49–15(b).

**6.** Section 1322(b) provides in relevant part:

(b) ... the plan may—

.　.　.　.　.

(5) ... provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due ....
11 U.S.C.A. § 1322(b)(5)(West 2003).

**7.** At the February 6, 2003 hearing (the "Hearing") on the Objection and the Reply, both documents were marked off at the request of the parties. Upon Debtor's request, the Hearing was subsequently continued to the confirmation hearing date on April 10, 2003, at which hearing the court scheduled an evidentiary hearing with respect to the Objection and Reply for June 17, 2003.

**8.** The precise aggregate amount of the Disputed Charges is unclear. In any event, the par-

to be paid in connection with a Section 1322(b)(5) "cure." The Debtor also seeks an award of attorney's fees (the "Attorney's Fees") incurred in connection with the prosecution of the Objection.

WFBM also filed an objection to the confirmation of the Plan (Doc. I.D. No. 12), claiming that the amount of arrearage was under-reported in the Plan. The Debtor filed an amended chapter 13 plan (Doc. I.D. No. 26, the "Amended Plan") on April 10, 2003 that listed $9,743.00 as the arrearage owed to WFBM (virtually the same amount as claimed by WFBM in its proof of claim). WFBM accordingly withdrew its confirmation objection with a reservation of rights. Therefore, on April 11, 2003, an order confirming the Amended Plan issued with the Debtor reserving her right to object to WFBM's claim for arrearage and later to modify the Amended Plan to state the amount of the arrearage in a lesser amount (if appropriate).

It is WFBM's position that the Debtor's payment of the Disputed Charges is "necessary to cure the default" within the meaning of Section 1322(e).[9] The Debtor's position is that the Disputed Charges are not enforceable obligations of the Debtor under state law and that Section 1322(e) does not otherwise require the Debtor to pay them as a condition to a Section 1322(b)(5) "cure." For the reasons set forth below, the court agrees with the Debtor.

## II. DISCUSSION

WFBM argues that, under the circumstances presented here, the Disputed Charges are valid late charges under state law. On that theory, Section 1322(e) requires payment of the Disputed Charges because they are part of the arrearage. WFBM also appears to argue in the alternative that, even if the Disputed Charges are not properly included in the arrearage (because they are not enforceable late charges), Section 1322(e) requires payment of the Disputed Charges simply because Paragraph 18 allegedly requires such payment. On that theory, the "amount necessary to cure the default" within the purview of Section 1322(e) includes both amounts included in the arrearage (with interest, if appropriate) *and* amounts payment of which (although not part of the arrearage or interest thereon) is a contractual condition to "cure." The court will consider each argument in turn below.

### A. *Section 1322(e)*

#### 1. *Enforceability Vel Non of the Disputed Charges as Late Charges*

It is generally recognized that charges are not "necessary to cure" within the purview of Section 1322(e) unless they are (1) required by the underlying agreement and (2) not prohibited by applicable state law. *See, e.g.*, Alan N. Resnick & Henry J. Sommer, 8 *Collier on Bankruptcy* ¶ 1322.18, at 1322–56 (15th ed. rev.2002). The Debtor argues that the Disputed Charges are unenforceable as late charges under applicable (Connecticut) state law and thus not "necessary to cure the default" within the purview of Section 1322(e).

■ It is clear under Connecticut law that paragraph 7(A) of the Note does not

---

ties agree that the Disputed Charges do not exceed $400. Although the amount in dispute in this case is small, this precise issue appears to present itself with some frequency in other cases.

**9.** Section 1322(e) provides in relevant part:

[I]f it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

11 U.S.C. § 1322(e) (West 2003).

create an enforceable obligation for post-acceleration late charges because post-acceleration late charges are unenforceable under Connecticut law. *See Federal Deposit Insurance Corp. v. M.F.P. Realty Associates,* 870 F.Supp. 451, 455 (D.Conn. 1994); *Shadhali, Inc. v. Hintlian,* 41 Conn.App. 225, 230, 675 A.2d 3, *cert. denied,* 237 Conn. 926, 677 A.2d 948 (1996); *Federal Deposit Insurance Corp. v. Napert–Boyer Partnership,* 40 Conn.App. 434, 443, 671 A.2d 1303 (1996). The underlying logic is simple: once the borrower is in default and the loan is accelerated, the full amount of the loan becomes due immediately, and there remains no obligation by the borrower to continue making monthly installment payments. In the absence of an obligation to make monthly payments, payments cannot be "late." Accordingly, Connecticut courts hold that such late charges cannot exist, let alone be collected. *See id.*

■ However, WFBM argues that either the filing of this case or confirmation of the Amended Plan de-accelerated the Mortgage obligation, thus retroactively making the Disputed Charges valid as pre-acceleration late charges. The court finds that argument unpersuasive. Filing of a bankruptcy petition does not itself "de-accelerate" an accelerated debt. *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 244 (Utah Ct.App.1991). On the other hand, at least one court has held that confirmation (as opposed to consummation) of a chapter 13 plan providing for a Section 1322(b)(5) "cure" and "maint[enance]" does de-accelerate the underlying debt. *See Federal National Mortgage Associa-*

*tion v. Miller,* 123 Misc.2d 431, 473 N.Y.S.2d 743 (N.Y.Sup.Ct.1984) (even though debt was accelerated pre-confirmation, a new acceleration was required to support a postconfirmation foreclosure). However, determination of the amount "necessary" to effectuate a "cure" under Section 1322(b)(5) occurs as a *precondition* to confirmation. Thus, the determination of the "amount necessary to cure" is made as of a time no later than immediately *before* plan confirmation. As of that time, the subject debt still remained accelerated and the Disputed Charges still constituted unenforceable post-acceleration late charges.[10] Accordingly, the Disputed Charges, if viewed only as late charges, are unenforceable under state law and are not within the purview of Section 1322(e).

2. *Whether Section 1322(e) Requires Payment of Charges that Are not Enforceable Debts under State Law if Such Payments Are Required by the Contract as a Condition to a Section 1322(b)(5) "Cure"*

■ It is apparent from the discussion above that, if the Disputed Charges are viewed as late charges, they are not "necessary to cure the default" within the purview of Section 1322(e) because they are unenforceable under state law. However, the Disputed Charges might be viewed not as late charges but, rather, as a fee (*i.e.,* a "reinstatement fee") payment of which is a contractual condition to the Debtor's exercise of any right of "reinstatement"[11] within the purview of Paragraph 18. Thus, WFBM appears to argue, the Disputed Charges, if deemed to be a "reinstatement

---

**10.** The Debtor's deferral of the relevant determination pursuant to its reservation of rights did not alter the time as of which the relevant determination was to be made.

**11.** The court will assume (for present purposes only and as WFBM apparently does)

that a Section 1322(b)(5) "cure" and "maint[enance]" is a "reinstatement" within the purview of Paragraph 18 if the temporal aspects of Paragraph 18 are met. The court further assumes, but does not decide, that the subject "reinstatement fee" would be an en-

fee," are included in "the amount *necessary* to cure the default" (11 U.S.C. § 1322(e) (emphasis added)) even if those charges are not part of the arrearage (i.e., the aggregate of relevant enforceable obligations of the Debtor) plus interest thereon (if appropriate).

Whatever the merits of WFBM's argument otherwise (and the court expresses no opinion thereon at this time), it cannot succeed on these facts. That is because Paragraph 18 on its face does not apply once a judgment of foreclosure has entered. (*See* Paragraph 18 ("... Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of ... entry of a judgment enforcing this Security Instrument....").) As noted above, a judgment of strict foreclosure was entered in respect of the Loan Documents prior to the commencement of this case. Therefore, at plan confirmation the Debtor no longer had a right to reinstate under Paragraph 18. Accordingly, on the instant facts, Paragraph 18 is irrelevant to what is "necessary to cure the default" under Section 1322(e), and the analysis set forth in subpart A, *supra*, is dispositive of the question.

### B. *Attorney's Fees*

 The Debtor seeks an award of the Attorney's Fees under Section 42–150bb of the Connecticut General Statutes.[12] Attorney's fees may be recovered in bankruptcy under Section 42–150bb if Connecticut state law supplies the rule of decision for the resolution of relevant issues. *See BankBoston, N.A. v. Sokolowski (In re Sokolowski)*, 205 F.3d 532, 535 (2d Cir. 2000); *In re Gifford*, 256 B.R. 661 (Bankr. D.Conn.2000) (Krechevsky, B.J.). This case is not materially different from *Gifford* in which Judge Krechevsky held that Section 42–150bb could serve as a basis for an award of fees in respect of the debtors' successful objection to their mortgage lender's proof of claim "because the court has determined a state law issue." *Gifford*, 256 B.R. at 664. Accordingly, at the request of either party, the court will schedule a hearing to determine the reasonable attorney's fees to which the Debtor may be entitled if the parties are unable to reach an agreement as to fees.

### III. CONCLUSION

For the reasons set forth above, an order will enter sustaining the Objection in part to the extent of disallowance of the Disputed Charges.

---

forceable contractual condition to a state-law "reinstatement".

12. The Debtor raised her claim for fees for the first time in her reply brief. Section 42–150bb provides:

Whenever any contract or lease entered into on or after October 1, 1979, to which a consumer is a party, provides for the attorney's fee of the commercial party to be paid by the consumer, an attorney's fee shall be awarded as a matter of law to the consumer who successfully prosecutes or defends an action or a counterclaim based upon the contract or lease .... In any action in which the consumer is entitled to an attorney's fee under this section and in which the commercial party is represented by its salaried employee, the attorney's fee awarded to the consumer shall be in a reasonable amount regardless of the size of the fee provided in the contract or lease for either party .... The provisions of this section shall apply only to contracts or leases in which the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes. Conn. Gen.Stat. Ann. § 42–150bb (West 2003).