**WELLS FARGO BANK MINNESOTA N.A., as Trustee, Appellant,**

v.

**Patricia Ann GUARNIERI, Appellee.**

**No. CIV. 3:03CV1591(MRK).**

United States District Court,
D. Connecticut.

April 14, 2004.

Martha Elizabeth Croog, West Hartford, CT, for Appellant.

James M. Nugent, Harlow, Adams & Friedman, P.C., Milford, CT, for Appellee.

### RULING ON APPEAL FROM BANKRUPTCY COURT

KRAVITZ, District Judge.

This is an appeal [doc. # 1] from an order of the United States Bankruptcy Court, District of Connecticut (Weil, B.J.) sustaining the debtor Patricia Ann Guarnieri's objection to a mortgage lender's claim for post-acceleration, pre-petition late

1. The loan was made by Option One Mortgage Company and later assigned to Wells

charges in the context of a "cure and maintenance" of the debt under § 1322(b)(5) of the Bankruptcy Code, 11 U.S.C. § 1322(b)(5). *In re Guarnieri*, 297 B.R. 365 (Bankr.D.Conn.2003). The Court AFFIRMS.

### I.

The facts are set forth in greater detail in Judge Weil's opinion, familiarity with which is assumed. Briefly stated, in February 2000, appellant Wells Fargo loaned Ms. Guarnieri $101,000 pursuant to an adjustable rate note (the "Note") and secured the Note with a mortgage (the "Mortgage") on Ms. Guarnieri's residence in West Haven, Connecticut.[1] When Ms. Guarnieri defaulted on the Note by failing to make certain payments, Wells Fargo accelerated all of the payments owing under the Note and began a mortgage foreclosure action in the Connecticut Superior Court. The Superior Court entered judgment of strict foreclosure, finding the debt owed to be $104,588.06 and setting a law date of December 2, 2002. *See id.* at 367. The amount found due by the Superior Court did not include any post-acceleration late charges.

Shortly before the law date, Ms. Guarnieri filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Approximately one week later, Ms. Guarnieri filed a Chapter 13 plan (the "Plan") that listed the arrearage due Wells Fargo on the Note and Mortgage as $6,635 and, pursuant to 11 U.S.C. § 1322(b)(5), proposed a "cure and maintain" plan for resolving that debt under which Ms. Guarnieri would pay the claimed arrearage and maintain the payment schedule provided in the Note over the term of the Plan. Wells Fargo objected to the Plan and filed a proof of

Fargo. *See Guarnieri*, 297 B.R. at 366.

claim asserting an arrearage of $9,743.82, including several hundred dollars of late charges during the post-acceleration, pre-petition time period that Wells Fargo claimed must be paid in order to "cure" Ms. Guarnieri's default under § 1322(b). It is these post-acceleration, pre-petition late charges—referred to in Judge Weil's opinion as the "Disputed Charges"—that are at issue in this appeal.[2]

Judge Weil rejected Wells Fargo's claim for post-acceleration, pre-petition late charges. At the outset, Judge Weil recognized that "charges are not 'necessary to cure' within the purview of § 1322(e) unless they are (1) required by the underlying agreement and (2) not prohibited by state law." *See id.* at 368. Citing a long line of decisions in Connecticut state courts and in this Court as well, Judge Weil then held that late charges assessed after a debtor has accelerated a debt due to nonpayment (so-called "post-acceleration late charges") are unenforceable as a matter of Connecticut law. *See id.* at 369 (citing *F.D.I.C. v. M.F.P. Realty Assocs.,* 870 F.Supp. 451, 455 (D.Conn.1994); *Shadhali, Inc. v. Hintlian,* 41 Conn.App. 225, 230, 675 A.2d 3 (1996); *F.D.I.C. v. Napert–Boyer P'ship,* 40 Conn.App. 434, 443, 671 A.2d 1303 (1996)). As Judge Weil explained,

> [t]he underlying logic of these cases is simple: once the borrower is in default and the loan is accelerated, the full amount of the loan becomes due immediately, and there remains no obligation by the borrower to continue making monthly payments. In the absence of an obligation to make monthly payments, payments cannot be "late." Accordingly, Connecticut courts hold that

such late charges cannot exist, let alone be collected.

*Guarnieri,* 297 B.R. at 369.

Next, Judge Weil rejected Wells Fargo's argument that the filing of a Chapter 13 petition or confirmation of the Chapter 13 plan retroactively "de-accelerated" Ms. Guarnieri's debt, thereby making collection of post-acceleration, pre-petition late charges proper and lawful. In particular, since the determination of the "amount necessary to cure" under § 1322(e) is made immediately before confirmation and since as of that time Ms. Guarnieri's debt to Wells Fargo remained accelerated, "the Disputed Charges still constituted unenforceable post-acceleration late charges." *Id.* at 369. As a consequence, Judge Weil concluded, if the Disputed Charges are viewed only as "late charges," they are not "necessary to cure the default" within the meaning of § 1322(e) because they are unenforceable under state law. *See id.* at 369.

Finally, Judge Weil held that the Disputed Charges could also not be collected as "reinstatement fees" under paragraph 18 of the Mortgage because that provision does not apply once a judgment of foreclosure has entered and, in this case, the judgment of foreclosure entered before confirmation of the Plan occurred. *See id.* at 370. "Accordingly," concluded Judge Weil, "on the instant facts, Paragraph 18 is irrelevant to what is 'necessary to cure the default' under Section 1322(e)..." *Id.*

## II.

Curiously, the issue raised by this appeal—namely, whether payment of post-acceleration, pre-petition late charges is "necessary to cure the default" under § 1322(e)—appears not to have been de-

---

**2.** Judge Weil's opinion notes that the amounts in dispute "do not exceed $400." *Guarnieri,* 297 B.R. at 368 n. 7.

cided before Judge Weil's decision. Though resolution of this issue is not free from doubt, the Court is nonetheless persuaded that Judge Weil properly decided this issue in favor of the debtor and against Wells Fargo.

Several subsections of 11 U.S.C. § 1322 are relevant to this appeal. First, § 1322(b)(2) provides that a Chapter 13 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence ...*" (emphasis added). Nevertheless, subsection (b)(5) provides that "notwithstanding paragraph (2) of this subsection, [a plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any secured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." Moreover, § 1322(c)(1) states that "[n]otwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." Finally, § 1322(e) provides that "[n]otwithstanding subsection (b)(2) of this section ... if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."

Both parties agree that Judge Weil properly observed at the outset of her analysis that "charges are not 'necessary to cure' within the purview of Section 1322(e) unless they are (1) required by the underlying agreement and (2) not prohibited by state law." *See id.* at 368. More-over, Wells Fargo does not take issue with Judge Weil's holding that under Connecticut law post-acceleration late charges are ordinarily improper and unenforceable. Instead, Wells Fargo argues that all of the decisions cited by Judge Weil involved attempts to impose late charges on a debtor seeking to redeem a mortgage pursuant to a judgment of strict foreclosure, and that is not what happened in this case. When, as here, a debtor files a Chapter 13 petition and intends to cure a pre-petition mortgage default rather than redeem the mortgage pursuant to a judgment of strict foreclosure, Wells Fargo contends that the filing of the Chapter 13 petition effectuates a "de-acceleration" of the debt and in such circumstances, the debtor is entitled to recover pre-petition late charges on the de-accelerated debt. *See* Appellant's Brief [doc. # 5] at 11.

Like Judge Weil, the Court rejects Wells Fargo's contention that the mere filing of a Chapter 13 petition itself effectuates a de-acceleration of an accelerated debt. *See Guarnieri*, 297 B.R. at 369. As counsel for Wells Fargo acknowledged at oral argument, at the time a Chapter 13 petition is filed, it is not clear whether the debtor will propose a cure and maintenance plan under § 1322(b)(5)—as happened here—or whether the debtor will instead seek to redeem the mortgage. Nor is it at all certain at the time a petition is filed that the Bankruptcy Court will even accept the debtor's plan, let alone what terms the court will find acceptable. All the filing of a Chapter 13 petition does is stay the judgment of strict foreclosure and permit the debtor to file a plan. Therefore, contrary to Wells Fargo's argument, the filing itself does not "cure" the default or effectuate a de-acceleration of an accelerated debt.

While it true enough that some courts have spoken of confirmation of a

cure and maintenance plan as "de-accelerating" an accelerated debt, those decisions do not assist Wells Fargo, which is perhaps why it focuses all of its arguments on appeal on the filing of the plan, and not its confirmation. The reason the concept of de-acceleration upon confirmation does not benefit Wells Fargo is that, as Judge Weil pointed out, before confirmation no post-acceleration late charges have been or could have been assessed. *See id.* at 369. And once the plan is confirmed, the debtor's default is retroactively cured and the parties are returned to pre-default (and thus pre-acceleration) conditions, subject to satisfactory fulfillment of the plan's requirements. By definition, therefore, upon confirmation of a cure and maintenance plan (and satisfactory fulfillment of its terms), there are no "late" payments on which the lender can assess late charges. As the Second Circuit explained in *Di Pierro v. Taddeo*, 685 F.2d 24 (2d Cir. 1982),

> When Congress empowered Chapter 13 debtors to "cure defaults," we think Congress intended to allow mortgagors to "de-accelerate" their mortgage and reinstate its original payment schedule. We so hold for two reasons. First, we think that the power to cure must comprehend the power to "de-accelerate." This follows from the concept of "curing a default." A default is an event in the debtor-creditor relationship which triggers certain consequences—here acceleration. *Curing a default commonly means taking care of the triggering event and returning to pre-default conditions.*

*Id.* at 26 (emphasis added). "The consequences [of the default] are thus nullified" by confirmation (and later satisfactory fulfillment) of a Chapter 13 plan. *Id.*

■ Wells Fargo's more promising argument is not that the mere filing of a Chapter 13 petition de-accelerates an accelerated debt, but rather than when the Bankruptcy Court confirms a cure and maintenance plan it effectively "reinstates" the mortgage and note "as if no acceleration had occurred." *See* Appellant's Brief at 12–13. And since paragraph 18 of the Mortgage requires payment of late charges in the event of reinstatement,[3] the bank is entitled to post-acceleration, pre-petition late charges as a part of the "amounts necessary to cure the default," within the meaning of § 1322(e). Any other result, Wells Fargo argues, would undermine its contractual rights contrary to the intent of the Bankruptcy Code. *See id.* at 12–13 (citing *Nobelman v. Am. Savings Bank*, 508 U.S. 324, 327, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993); *Citicorp Mortgage, Inc. v. Hunt*, 1994 U.S. Dist. LEXIS 13146, No. 5:92cv56, at *6 (D.Conn. Aug. 18, 1994)); *see also,* Appellant's Brief at 16–19.

---

**3.** Paragraph 18 provides, in pertinent part, as follows: "**Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days ... before sale of the Property pursuant to any power of sale contained in his Security Instrument; or (b) entry of judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays lender all sums which then would be due under this Security Instrument and the Note *as if no acceleration had occurred;* (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument ... and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured thereby shall remain fully effective a if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17 [transfer of the property or beneficial interest by Borrower]."

In making this argument, Wells Fargo relies heavily upon a recent decision in the Seventh Circuit in *Rizzo v. Pierce & Assocs.*, 351 F.3d 791 (7th Cir.2003). *See* Appellant's Reply Brief [doc. # 10]. In *Rizzo*, which did not involve a bankruptcy, the plaintiffs reinstated a note and mortgage under the terms of a reinstatement provision in the parties' agreement that required payment of all sums "which would then be due . . . had no acceleration occurred." *Id.* at 793. The court held that under the terms of the parties' agreement, this provision required the plaintiffs to pay late charges if they wished to reinstate the loan. The court acknowledged the line of cases, cited by Judge Weil, that have held that post-acceleration late charges are unenforceable, but the court limited those decisions to the redemption context. The court held that if the plaintiffs did not want to pay late charges, they could simply pay the full accelerated loan amount (i.e., redeem the loan). In that context, any attempt to collect post-acceleration late fees would be unenforceable under Illinois law. However, if the plaintiffs preferred instead not to pay the full, accelerated loan amount but rather to reinstate the loan (and then continue to pay off the loan in accordance with its payment schedule), they would have to pay late charges since under the explicit terms of the parties' agreement, the amounts due under reinstatement are calculated as if no acceleration had occurred. *See Rizzo*, 351 F.3d at 793–94.

No Connecticut court has had occasion to consider *Rizzo*. Nor, apparently, has any court explicitly decided whether a lender may recover post-acceleration late charges under Connecticut law when the debtor seeks to reinstate a loan rather than redeem it. However, this Court need not decide that issue because, as Judge Weil notes in her decision, Ms. Guarnieri did not reinstate her loan under paragraph 18 of the Mortgage. Indeed, under the express terms of paragraph 18 of the Mortgage, Ms. Guarnieri could not have reinstated her loan since at the time she filed for Chapter 13 bankruptcy, a "judgment enforcing the Security Instrument" had already entered. *See* note 3 *supra.* Therefore, this Court has no occasion to decide whether paragraph 18 would require payment of late fees when a debtor seeks to reinstate a loan under paragraph 18 or whether such a requirement would violate Connecticut law.

Ms. Guarnieri's default was cured not under the terms of paragraph 18 of her Mortgage but rather under the terms of § 1322 of the Bankruptcy Code and nothing in either the Note or the Mortgage provides for imposition of post-acceleration late charges in those circumstances. Thus, *Rizzo* is inapplicable to this case, and Judge Weil's confirmation of Ms. Guarnieri's Plan does not derogate from the parties' contractual undertakings. While Wells Fargo argues that there is no difference between reinstatement under the Mortgage and cure under § 1322, the Court disagrees. There certainly is a considerable economic difference between the two, even if courts sometimes loosely refer to a Chapter 13 "cure" as "reinstating" a mortgage. *See Taddeo*, 685 F.2d at 26 (in the context of a Chapter 13 cure and maintenance plan, referring to "reinstat[ing the] original payment schedule"). For one, if Ms. Guarnieri had sought to reinstate her loan under paragraph 18 and even been able to do so, she would have had to pay the full amount of the arrearage immediately. By contrast, under § 1322, the Bankruptcy Court could allow Ms. Guarnieri up to a maximum of 60 months to pay the arrearage. *See* 11 U.S.C. § 1322(d). Furthermore, while the "amount necessary to cure" is determined by reference to the parties' contract, the

amount of each individual payment (even post-petition, pre-confirmation payments) and the timing of those payments are determined by the terms of the plan, not by the parties' contract.

■ Moreover, since Wells Fargo was the draftsman of the parties' loan agreements, their terms should, as a matter of ordinary contract law, be construed against Wells Fargo. *See, e.g., Breiter v. Breiter,* 80 Conn.App. 332, 336–37, 835 A.2d 111 (2003); *Greenburg v. Greenburg,* 26 Conn.App. 591, 596, 602 A.2d 1056 (1992); *see also Sturman v. Socha,* 191 Conn. 1, 9, 463 A.2d 527 (1983) ("[T]he language of a contract is typically construed most strongly against the party whose language it is and for whose benefit it was inserted."). Wells Fargo should not, therefore, be able to stretch the plain language of paragraph 18 (and thereby enhance its ability to impose late charges) beyond its express terms, particularly where, as here, Wells Fargo seeks to do so in order to impose additional (and otherwise unlawful) charges on the debtor.

■ Wells Fargo last argues that disallowing its claim for post-acceleration, pre-petition late charges is unfair and inequitable. Since the Court has concluded that Wells Fargo is barred from recovering post-acceleration, pre-petition late charges by Connecticut law and the loan documents that Wells Fargo itself drafted, the Court is not convinced that equity should enter the analysis at all. However, if relevant at all, the Court concludes that the equities would favor Ms. Guarnieri. First, as a part of the Plan, Wells Fargo will receive all of the principal owed under the loan, interest (including accrued interest) and, the Court was informed at oral argument, attorneys' fees; the loan will thus be fully restored to its pre-default status. Second, at argument both parties acknowledged that in the ordinary case, the time

period between acceleration and the filing of a Chapter 13 petition is relatively brief, so that the amount of any post-acceleration, pre-petition late charges would typically be small. That was certainly true in this case. Therefore, the amount of money the lender is "denied" in these circumstances is ordinarily relatively small in the scheme of things. Third, as it was explained at oral argument, late charges are assessed because of the administrative inconvenience and cost of handling payments outside of the payment schedule established in the parties' loan documents. However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments. Of course, the amount at stake and Wells Fargo's purpose in collecting it would be entirely irrelevant if the parties' contract required its payment and Connecticut law permitted it, but, as the Court has just explained, that is not the case here. If equity were relevant at all, therefore, it would not favor Wells Fargo's attempt to recover late charges on monthly payments that were never due.

Accordingly, the judgment of the Bankruptcy Court is hereby AFFIRMED. The Clerk is directed to close this case.

IT IS SO ORDERED.