# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**West Bend Mutual Insurance Co. v. Talton, 2013 IL App (2d) 120814**

---

| | |
|---|---|
| Appellate Court Caption | WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. MAURICE TALTON, ROBERT J. LASH, and JAA VALENTINE, Defendants-Appellants (Championship Investments, LLC; the Rock River Raptors; and the Raptors Football Owners Club, LP, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-0814 |
| Filed | September 27, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly denied defendant professional indoor football players' motion for summary judgment and entered summary judgment for plaintiff workers' compensation insurer based on the ruling that defendants' claims for the injuries they suffered while playing football were not compensable under the Wisconsin workers' compensation law, since there was no genuine issue of material fact as to whether defendants were employees of plaintiff's insured, and in the absence of an employer-employee relationship between defendants and plaintiff's insured, plaintiff was not obligated to provide coverage for defendants. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 09-MR-628; the Hon. Eugene G. Doherty, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Gregory Szul, of Greg Tuite & Associates, of Rockford, for appellants.

Thomas F. Lucas and Sumi Yang, both of McKenna Storer, of Chicago, for appellee.

Panel

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Zenoff and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendants, Maurice Talton, Robert J. Lash, and Jaa Valentine, appeal the trial court's order denying their motion for summary judgment and granting summary judgment in favor of plaintiff, West Bend Mutual Insurance Company. On appeal, defendants argue that the trial court erred: (1) because there is a genuine issue of material fact regarding whether defendants were employees of plaintiff's insured, Championship Investments, LLC (Championship); and (2) by ruling that defendants' claims were not compensable under Wisconsin's workers' compensation law. We affirm for the reasons stated below.

¶ 2                              I. BACKGROUND

¶ 3    The following facts are taken from the pleadings and attached documents. On November 12 and 18, and December 4, 2008, defendants signed individual contracts to play football for the Rock River Raptors (Raptors) indoor football team for the 2009 season. The Raptors were part of the Continental Indoor Football League (CIFL), which played its home games in Rockford, Illinois. On March 7 and 20, and April 11, 2009, Talton, Lash, and Valentine, respectively, were injured while playing home games in Rockford. In June 2009, defendants filed applications for benefits with the Illinois Workers' Compensation Commission.

¶ 4    The injuries were reported to plaintiff and coverage was sought under a policy issued to Championship. When Talton's and Lash's claims were reported to plaintiff, plaintiff was advised that Talton and Lash were employed by Championship and that Championship owned both the Raptors and the Wisconsin Wolfpack, an outdoor football team that was a member of the North American Football League (NAFL). Plaintiff began paying Talton and Lash workers' compensation benefits. Plaintiff did not pay Valentine workers' compensation benefits, because, shortly after his injury was reported to plaintiff, it was advised that Championship did not own the Raptors and that defendants' injuries had occurred in Illinois. As a result, plaintiff also stopped paying benefits to Talton and Lash.

¶ 5    The headings on Valentine's and Lash's contracts state, "Championship Investments, LLC–CIFL Employment Agreement." The heading on Talton's agreement states,

-2-

"Championship Sports–CIFL Employment Agreement."

¶ 6    Jordan Kopac, the president of Championship, provided the following deposition testimony. Championship was a limited liability company formed in 2006 in Wisconsin by Kopac to operate the Wisconsin Wolfpack, a football team that participated in the NAFL, an outdoor summer league. Kopac was also the owner of JFK2, LLC. Around September 2008, Kopac entered into discussions with Robert Lowe, one of the owners of the Raptors Football Owners Club, LP, the owner and operator of the Raptors, a CIFL team. These discussions led to JFK2, LLC, becoming a general partner of the Raptors Football Owners Club, LP, for the 2009 season.

¶ 7    During Kopac's deposition he was asked the following questions and provided the following answers.

"Q. [Paragraph 2 of the] agreement states team employs employee as a skilled employee. Employee accepts such employment. That's what the document states, correct?

A. Yes.

Q. And the teams referred to in Paragraph 2 is the Rock River Raptors, correct?

* * *

A. It's a typo. It's a typo. In my opinion, that's a typo. This is a Championship Investment contract. Somebody made a typo."

Kopac also testified that Championship paid defendants and that Championship was reimbursed by the Raptors Football Owners Club, LP, for each payment.

¶ 8    Lowe, an attorney, provided the following deposition testimony. In 2008 and 2009, Lowe's "entity, Lowe Entertainment, was [a] general partner in the Raptors Football Owners Club, LP." The Raptors Football Owners Club, LP, was formed to operate the Raptors. Lowe Entertainment was an "S corp." Lowe was president of Lowe Entertainment. In late 2008, JFK2, LLC, became the second general partner of the Raptors Football Owners Club, LP. There were also five limited partners. The Raptors Football Owners Club, LP, operated the Raptors. For the 2009 season the "Raptors Football Owners Club[, LP's,] involvement for the Raptors and the Wolfpack was 'putting on the show.' " "The employer" referred to in defendants' contracts is Championship. The Raptors "is not a legal entity"; it is a name. It was the position of Championship and the Raptors Football Owners Club, LP, that the individual players for the Raptors for the 2009 season were employees of Championship. In the 2008 season, the Raptors Football Owners Club, LP, applied for and obtained workers' compensation insurance coverage for the Raptors for the 2008 season, but not for the 2009 season.

¶ 9    Plaintiff had issued a workers' compensation insurance policy to Championship that covered August 7, 2008, to August 7, 2009. Kopac testified that when he obtained the policy he had an interest only in the Wolfpack football team. The policy applied to injuries to employees of Championship. The policy provided that plaintiff would pay workers' compensation benefits as required by the workers' compensation law of Wisconsin. The policy issued to Championship was issued through the Wisconsin Workers' Compensation

Insurance Pool.

¶ 10        On August 8, 2008, Championship submitted an application to the Wisconsin Workers' Compensation Insurance Pool. Kopac signed the application as president of Championship. He testified that he signed the application on behalf of Championship. Under "Nature of Business/Description of Operations," the application states "football team."

¶ 11        On August 5, 2009, plaintiff filed a declaratory judgment action against defendants, Championship, the Raptors, and the Raptors Football Owners Club, LP. Plaintiff sought a declaration that: its policy issued to Championship did not provide coverage for defendants' workers' compensation claims for injuries suffered as players for the Raptors; plaintiff was not obligated to pay workers' compensation benefits to or on behalf of defendants for the injuries they claimed to have suffered while employed as players for the Raptors; plaintiff was not obligated to defend Championship, the Raptors, or the Raptors Football Owners Club, LP, in any Illinois Workers' Compensation Commission proceeding; and plaintiff was not obligated to indemnify Championship, the Raptors, or the Raptors Football Owners Club, LP, for defendants' workers' compensation claims. The parties filed cross-motions for summary judgment.

¶ 12        On May 16, 2012, the trial court issued a memorandum opinion denying defendants' motion for summary judgment and granting plaintiff's motion for summary judgment. The trial court determined that defendants were not employed by Championship, stating, in part:

        "[T]he employment contracts identify each 'Employee' and also the 'Team,' and the latter is specified as the Rock River Raptors. The contracts also state that the 'Team employs Employee,' *i.e.*, the Rock River Raptors employ each of the three employees. It is true that the contract is labeled 'Championship Investments, LLC–CIFL EMPLOYMENT AGREEMENT,' but this label can hardly control over the *express definitions* of the contract. It is clear from the contract that each player is an employee of the Rock River Raptors.

        Defendants asks this court to look outside the four corners of the document to draw a different conclusion. They note that the players could be shuttled between teams; they point out that Championship ultimately paid salaries via reimbursement; and they reference testimony about what certain individuals *thought* the employment relationship was. None of this parol evidence is sufficient to override the clear language of an express contract." (Emphases in original.)

The trial court also determined that defendants' claims were not compensable under the Wisconsin Workers' Compensation Act (Wisconsin Act), particularly, section 102.03(5) (Wis. Stat. § 102.03(5) (2008)). Defendants filed their notice of appeal on July 23, 2012.[1]

_____

        [1]Championship, the Raptors, and the Raptors Football Owners Club, LP, filed a motion for summary judgment separate from defendants. The trial court denied the motion. Championship, the Raptors, and the Raptors Football Owners Club, LP, did not appeal the trial court's denial of their motion for summary judgment and are not parties to this appeal.

¶ 13                                    II. ANALYSIS

¶ 14        Defendants argue that the trial court erred by granting plaintiff's motion for summary judgment, because there is a genuine issue of material fact as to whether defendants were employees of Championship.

¶ 15        Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). We review *de novo* a trial court's decision to grant or deny a motion for summary judgment. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 30.

¶ 16        In this case, plaintiff's insurance policy was issued to Championship. Part one of the policy states, "[w]e will pay promptly when due the benefits required of you by the workers compensation law." "Workers' Compensation Law" is defined as the law "of each state or territory named in Item 3.A. of the Information Page." The information page states: "Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: WI." A page titled "WISCONSIN LAW ENDORSEMENT" then specifies "Workers Compensation Law" as "Chapter 102, Wisconsin Statutes [(the Wisconsin Act)]." Wis. Stat. § 102.01 *et seq.* (2008).

¶ 17        It is well settled that the Wisconsin Act imposes workers' compensation liability on an employer only when the employer has an employer-employee relationship with an injured person. See Wis. Stat. § 102.03 (2008)[2]; see also *Wendlandt v. Industrial Comm'n*, 39 N.W.2d 854, 856 (Wis. 1949) ("The foundation of the Workmen's Compensation Act is the existence of an actual employer-employe [*sic*] relationship."); *Acuity Mutual Insurance Co. v. Olivas*, 2007 WI 12, ¶ 84, 298 Wis. 2d 640, 726 N.W.2d 258 ("Clearly the Act does not impose workers' compensation liability on an employer when the employer does not have an employer-employee relationship with an injured person."). Thus, in the absence of liability on the part of an employer to an employee, there can be no liability of a workers' compensation carrier. *Marlin Electric Co. v. Industrial Comm'n*, 148 N.W.2d 74, 79 (Wis. 1967) (citing *Scholz v. Industrial Comm'n*, 64 N.W.2d 204, 209 (Wis. 1954)).

¶ 18        In this case, the trial court determined that defendants were not employed by Championship due to the express language of defendants' employment contracts. Defendants argue that the employment contracts are facially ambiguous regarding whether Championship is a party to the contracts. Defendants argue that the contracts are facially ambiguous because "Championship Investments, LLC–CIFL Employment Agreement" (on Valentine's and Lash's contracts) or "Championship Sports–CIFL Employment Agreement" (on Talton's contract) is typed on the top of the first page of each four-page contract. Plaintiff argues that

_____

[2]Section 102.03 of the Wisconsin Act provides in part:
        "102.03. Conditions of liability
        (1) Liability under this chapter shall exist against an employer only where the following conditions concur:
                (a) Where the employee sustains an injury." Wis. Stat. § 102.03 (2008).

the contracts unambiguously provide that defendants were employees solely of the Raptors. Plaintiff argues that, therefore, there was no need for the court to consider parol evidence.

¶ 19 When construing a contract, courts traditionally apply the "four corners rule" and look to the language of the contract alone to give effect to the intent of the parties. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). If the language of a contract is clear and facially unambiguous, the court interprets the contract as a matter of law without the use of extrinsic evidence. *Id.*; see also *Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007) ("A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent."). However, if the language of the contract is susceptible to more than one meaning, it is ambiguous and a court may consider extrinsic evidence to determine the intent of the parties. *Air Safety*, 185 Ill. 2d at 462-63; see also *Gallagher*, 226 Ill. 2d at 233. An ambiguity is not created merely because the parties disagree. *Thompson v. Gordon*, 241 Ill. 2d 428, 443 (2011). Whether contract language is ambiguous and requires extrinsic evidence for interpretation is a question of law subject to *de novo* review. *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 878 (2004).

¶ 20 In this case, each contract provided the following, in relevant part:

"THIS AGREEMENT between [Valentine, Lash, and Talton], 'Employee' and the Rock River Raptors, 'Team' which is a member of the Continental Indoor Football League, CFL [*sic*]. In consideration of the promises set forth in this agreement, the Employee and Team agree as follows:

* * *

**2. EMPLOYMENT & SERVICES,** Team employs Employee as a skilled Employee. Employee accepts such employment."

¶ 21 Here, although the words "Championship Investments, LLC–CIFL Employment Agreement" (on Valentine's and Lash's contracts) or "Championship Sports–CIFL Employment Agreement" (on Talton's contract) appear on the first page of each of defendants' contracts, the contracts clearly and unambiguously define the parties and their relationships. The contracts identify each defendant as "Employee" and the Raptors as "Team." Further, the contracts provide that the "Team employs Employee." Championship is not identified as a party, either as an employer or as "Team." Thus, the plain and unambiguous terms of the contracts provide that defendants were employed only by the Raptors, and nothing in the contracts indicates that defendants were employed by Championship. The labels typed at the tops of the first pages of the contracts do not render the clear, plain, and ordinary language of the contracts ambiguous. See *A. Epstein & Sons International, Inc. v. Eppstein Uhen Architects, Inc.*, 408 Ill. App. 3d 714, 720 (2011) (the label on a contract will not determine its legal effect; rather, the intention of the parties will govern). Accordingly, no facial ambiguity exists regarding whether Championship employed defendants; thus, parol evidence need not be considered. Thus, there is no genuine issue of material fact regarding whether Championship was defendants' employer.

¶ 22 Defendants argue that the trial court erred by failing to consider parol evidence under the provisional admission approach to contract interpretation. In *Air Safety*, our supreme court

-6-

explained that under the provisional admission approach:

"[A]lthough the language of a contract is facially unambiguous, a party may still proffer parol evidence to the trial judge for the purpose of showing that an ambiguity exists which can be found only by looking beyond the clear language of the contract." *Air Safety*, 185 Ill. 2d at 463.

¶ 23 After explaining the provisional admission approach and acknowledging that it had been applied by Illinois appellate courts, our supreme court declined to adopt it. *Id.* at 464. The court reasoned that, because the contract at issue contained an integration clause, unlike the contracts in this case, the four corners rule must be applied. *Id.* at 465. The court declined "to rule on whether the provisional admission approach may be applied to interpret a contract which does not contain an integration clause until such a case is squarely before the court." *Id.* at 464 n.1.

¶ 24 Although such a case has yet to come squarely before the supreme court, it did come before this court in *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 874, 880. In *River's Edge*, we discussed whether the provisional admission approach should be applied to a contract that, like the contracts at issue here, did not contain an integration clause. *Id.* at 878. After acknowledging that other courts had adopted the provisional admission approach, we declined to employ it and, instead, employed the traditional four corners rule. *Id.* at 880. We reasoned that "[t]he holding in [*Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106 (1921),] remains binding precedent upon this court." *River's Edge*, 353 Ill. App. 3d at 880. In *Armstrong Paint*, the Illinois Supreme Court stated:

"When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witnesses and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing. All conversations and parol agreements between the parties prior to the written agreement are so merged therein that they cannot be given in evidence for the purpose of changing the contract or showing an intention or understanding different from that expressed in the written agreement." *Armstrong Paint*, 301 Ill. at 106.

Accordingly, in this case, we decline defendants' invitation to employ the provisional admission approach and refuse to consider parol evidence to determine the meaning of facially unambiguous contracts.

¶ 25 Defendants cite *Gassner v. Raynor Manufacturing Co.*, 409 Ill. App. 3d 995 (2011), to support their argument. In *Gassner*, although this court discussed the provisional admission approach, we did not adopt it. *Id.* at 1007. We considered the plain language of the contract and held that the contract was facially ambiguous. *Id.* at 1010-12. Thus, *Gassner* is not persuasive.

¶ 26 However, even if we considered the extrinsic or parol evidence defendants rely upon, we would come to the same conclusion; there is no genuine issue of material fact regarding whether Championship was defendants' employer.

¶ 27 Defendants urge this court to consider the following extrinsic or parol evidence. Kopac

testified that, although the contracts identified "the team" as the Raptors, he considered that a typo and considered the agreements to be "Championship contracts." This evidence would be inadmissible under the provisional admission approach because it is not objective, as Kopac is not a disinterested third party. See *Ahsan v. Eagle, Inc.*, 287 Ill. App. 3d 788, 790-91 (1997) ("A party that asserts extrinsic ambiguity is entitled to present to the court objective evidence, *i.e.*, evidence that cannot be faked and can be supplied by disinterested third parties."). Thus, we need not consider what this interested party thought about the contracts after defendants suffered injuries.

¶ 28        Defendants also note that Lowe testified that the Raptors is merely a name and is "not a legal entity." Further, defendants point to Championship's application to the Wisconsin Workers' Compensation Insurance Pool, which indicated that the nature of the business was "football team" and that Championship's employees traveled out of state, were an "athletic team," and played "Contact Sports." However, none of this evidence indicates that Championship employed defendants. The application sought coverage for Championship's only team at that time, the Wolfpack, which played "away" games in other states. When the application was prepared, the Raptors did not exist and Kopac had no connection to the team. Further, defendants ignore that the record indicates that Championship had no legal interest in the Raptors. Championship was connected to the Raptors only tangentially, through Kopac; Kopac owned JFK2, and JFK2 was a general partner of the Raptors Football Owners Club, LP, which owned the Raptors.

¶ 29        Defendants also note that Championship paid defendants. However, the record indicates that the Raptors Football Owners Club, LP, reimbursed Championship for these payments. Accordingly, even after considering the parol evidence, we determine that there is no genuine issue of material fact regarding whether Championship was defendants' employer. The record indicates that there was no employer-employee relationship between Championship and defendants. Thus, plaintiff was not obligated to provide coverage for defendants under the terms of the policy that required coverage under the Wisconsin Act. Therefore, the trial court properly granted plaintiff's motion for summary judgment and denied defendants' motion for summary judgment.

¶ 30        Next, defendants argue that the trial court erred by determining that their claims were not compensable under the Wisconsin Act. Specifically, defendants argue that the court erred by relying on section 102.03(5) of the Wisconsin Act to determine that defendants' claims were not compensable. We have already determined that defendants' claims were not compensable under the Wisconsin Act, because there was no employer-employee relationship between Championship and defendants. Thus, we need not address defendants' other argument.

¶ 31                                III. CONCLUSION
¶ 32        For the reasons stated, we affirm the trial court's grant of plaintiff's motion for summary judgment and denial of defendants' motion for summary judgment.

¶ 33        Affirmed.